T.C. Memo. 1996-408


UNITED STATES TAX COURT


JOHN A. MALONE AND BRENDA K. MALONE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5069-94.                    Filed September 9, 1996.


<u>Jill E. Bliss</u>, for petitioners.

<u>William McCarthy</u> and <u>Keith G. Medleau</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined that petitioners had deficiencies in Federal income tax of $8,276 for 1989, $21,265 for 1990, and $1,901 for 1991.

Petitioners bought all of the stock of Seattle Pump Company, Inc. (Seattle Pump).  They gave the seller a note secured by letters of credit.  The letters of credit were secured in part by

a deed of trust on petitioners' residence. Seattle Pump employed petitioner John A. Malone (petitioner) and other members of his family after petitioners bought the stock.

Petitioners deducted interest they paid on the notes they used to buy the stock. Respondent disallowed the deduction on the grounds that the interest was personal interest under section 163(h). After concessions, we must decide:

1. Whether section 163(h), which was effective for taxable years beginning after December 31, 1986, applies to interest paid in 1989, 1990, and 1991 on indebtedness incurred in December 1986. We hold that it does.

2. Whether the interest at issue either is trade or business interest under section 163(h)(2)(A) or is investment interest under section 163(h)(2)(B) and (d). We hold that the interest is investment interest and that petitioners have not shown that they received any investment income. Sec. 163(d).

3. Whether petitioners may deduct the interest at issue as an expense for the production of income under section 212. We hold they may not.

4. Whether petitioners may deduct the interest at issue as qualified residence interest under section 163(h)(2)(D) and (3). We hold that they may not.

Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Petitioners

Petitioners are married and lived in Bothell, Washington, when they filed their petition. From August 1977 to August 1979, petitioner was an Internal Revenue Service revenue agent. From August 1979 to 1984, petitioner was comptroller for a company in Seattle. From 1984 to 1986, petitioner earned about $65,000 per year as a vice president of a real estate development company that converted apartments to condominiums. Petitioner had invested in real estate and had owned other businesses. He owned an ice business and an accounting business in the 1970's. He and his wife owned an ice cream and candy store in the 1980's. During the 1970's and 1980's, petitioner bought several houses and a condominium (most jointly with his brother) as rentals or as investments, and bought a condominium to rent to his daughter and son-in-law.

Petitioner was unemployed in the summer of 1986. He began to look for work for which he could earn at least $70,000 per year.

B.   Seattle Pump Company, Inc.

   1.   Sale to Petitioners

Petitioner's brother, Thomas Malone, is an attorney who represented Helene Voier (Voier), the owner of Seattle Pump. She wanted to sell her Seattle Pump stock. Petitioner studied Seattle Pump's books and records. He concluded that it had been profitable and that he could earn wages of $70,000 per year from it.

On December 19, 1986, petitioners bought all of the Seattle Pump stock from Voier. Petitioners agreed to pay $362,000 to Voier as follows: (a) $50,000 by January 1, 1987; (b) $50,000 by January 2, 1987; and (c) $262,000 by January 1, 1989, with 9 percent interest. Seattle Pump's records of accounts receivable and payable were not very accurate. Petitioners agreed to increase the purchase price of Voier's stock later based on the accounts receivable and payable.

Voier agreed to finance the sale if petitioners gave security other than Seattle Pump stock. On December 19, 1986, petitioners signed a $312,000 promissory note payable to Voier. The note required petitioners to pay $50,000 by January 2, 1987, and to make monthly payments of $2,500. The balance was payable by January 1, 1989, with interest at 9 percent. On December 19, 1986, petitioners borrowed $50,000 from Seattle Pump's cash reserves to make a downpayment to Voier.

Petitioners offered to secure the note with their home. Voier rejected it because she did not want to have to foreclose on their home if they defaulted. Petitioner asked Roy Throndson (Throndson), chief executive officer of Evergreen Bank in Seattle, whether the bank would approve a letter of credit to secure the note. Sometime before December 19, 1986, Throndson said the bank could approve a letter of credit for petitioners. Voier accepted a letter of credit as security for the note.

2. <u>1987 Letter of Credit</u>

To secure the $262,000 balance owed under the promissory note, petitioners gave Voier a letter of credit for $250,000, dated January 16, 1987, issued by Evergreen Bank. The letter of credit guaranteed that the bank would pay Voier if petitioners defaulted on their promissory note to her.

The 1987 letter of credit was secured by two deeds of trust that were dated January 16, 1987. The deeds of trust were filed on February 17, 1987 (securing $100,000) and February 18, 1987 (securing $150,000). The $100,000 deed of trust was secured by petitioners' residence, which was located on 1 acre of land. The $150,000 deed of trust was secured by 4 acres of land with no residence which petitioners and Thomas Malone jointly owned. The deeds of trust provided that the properties were to be reconveyed to petitioners if they met their obligations under the 1987 letter of credit.

The 1987 letter of credit allowed petitioners to pay any amounts Voier drew on it. Thus, petitioners could have avoided collection by Evergreen Bank by paying the bank the amount due.

Petitioners renewed the 1987 letter of credit annually. They used the deeds of trust that secured the 1987 letter of credit to secure later letters of credit.

Evergreen Bank required petitioners to manage and to participate materially in the Seattle Pump business as a condition for issuing the 1987 letter of credit. Evergreen Bank knew petitioner had previously owned and successfully managed other businesses.

3. Petitioners' Operation of Seattle Pump

Petitioners became employees of and began operating Seattle Pump when they bought Voier's stock on December 19, 1986. Petitioner was president, petitioner wife was vice president, and both were employees of Seattle Pump during the years in issue. Petitioner was responsible for business operations and hiring and firing of employees. Petitioners ran Seattle Pump from December 19, 1986, through the date of trial.

Petitioners received wages for services they provided to Seattle Pump during the years in issue as follows:

| Year | John Malone | Brenda Malone |
|------|-------------|---------------|
| 1989 | $87,576.87 | $4,324.00 |
| 1990 | 110,768.47 | 3,310.50 |
| 1991 | 9,153.84 | 4,420.00 |

Their combined wages from Seattle Pump were $35,063 in 1992.

4.    Modification of the Sale Agreement

On September 14, 1987, petitioners and Voier agreed to raise the Seattle Pump stock purchase price by $40,000 based on Seattle Pump's accounts receivable.  On that date, Voier agreed not to compete with petitioners, and petitioners agreed to give bonuses to certain key employees.  Petitioners gave Voier a promissory note for $40,000 secured by petitioners' savings account.

5.    1989 Promissory Note and Letter of Credit

A balloon payment for the balance owing on the $262,000 note was due in late 1988.  Petitioners asked Voier to extend the due dates of the $262,000 and $40,000 promissory notes.  Voier agreed to refinance and extend the due dates of the two notes.

On February 1, 1989, petitioners signed a $286,000 promissory note (1989 note) to Voier, which combined the outstanding obligations of the 1986 and 1988 promissory notes and increased the interest rate.  Voier required petitioners to secure the 1989 note with a letter of credit.  Petitioners applied to Evergreen Bank for a new letter of credit.  Evergreen Bank issued a new letter of credit on February 1, 1989 (the 1989 letter of credit) to secure the 1989 note.

As with the 1987 letter of credit, the 1989 letter of credit allowed petitioners to pay amounts drawn on it by Voier, enabling petitioners to avoid collection by Evergreen Bank by paying the amount due.  Petitioners used the same two deeds of trust to

secure the 1989 letter of credit that they had used for the 1987 letter of credit.

### 6. 1990 Letter of Credit

On April 15, 1990, petitioners applied for another letter of credit in favor of Voier to secure the 1989 note. Petitioners obtained a letter of credit on April 16, 1990 (the 1990 letter of credit). As with the 1989 letter of credit, the 1990 letter of credit allowed petitioners to pay any amounts drawn on it. The 1990 letter of credit expired on April 15, 1991, and could be renewed for 1 year.

### C. 1990 Key Bank Loan

In 1990, petitioners asked Evergreen Bank for a line of credit to cover Seattle Pump's working capital needs. Evergreen Bank denied petitioners' request.

Key Bank of Puget Sound (Key Bank) agreed to grant a line of credit to petitioners if they gave Key Bank all of Seattle Pump's loan business. Petitioners agreed to refinance their obligation to Voier through Key Bank. On July 1, 1990, petitioners borrowed $285,000 from Key Bank and paid Voier in full. Evergreen Bank reconveyed the deeds of trust to petitioners and petitioner's brother. Petitioners and petitioner's brother gave one deed of trust to secure the Key Bank Loan. The deed of trust covered the 1-acre parcel that petitioners owned and on which they lived and a separate 4-acre parcel that petitioners and Thomas Malone

jointly owned.  Petitioners had borrowed money to buy the 1-acre and 4-acre parcels.

## D.   Petitioners' Interest Deductions

Petitioners claimed the following interest deductions on Schedule C of their returns for the years in issue:

|      |            |
|------|------------|
| 1989 | [1]$ 53,098 |
| 1990 |    54,673  |
| 1991 |    54,141  |

## OPINION

## A.   Contentions of the Parties

Petitioners contend that they may deduct the interest at issue.  They contend that the limitation in section 163(h) on the deduction of personal interest does not apply because they signed the sales agreement before section 163(h) was effective, and because Congress did not intend section 163(h) to apply to the owners of a corporation who were also employees of the corporation.  If section 163(h) applies, petitioners contend that they may deduct the interest at issue because it is:  (1) Trade or business interest under section 163(h)(2)(A); (2) investment interest under section 163(h)(2)(B); (3) an expense for the production of income under section 212; or (4) qualified residence interest under section 163(h)(2)(D).

---

[1]Respondent determined that petitioners may not deduct those amounts, except respondent determined that petitioners may not deduct $53,048 for 1989.  There is no explanation for the $50 discrepancy.

Respondent contends that the interest at issue is nondeductible personal interest under section 163(h) and that section 212 does not apply.B. Limitation on the Deduction of

Personal Interest

Generally, a taxpayer other than a corporation may not deduct personal interest. Sec. 163(h)(1).[2] Investment

---

[2]Section 163(h) provides in pertinent part:

(h) Disallowance of Deductions for Personal Interest.--

   (1)  In General.--In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year.

   (2)  Personal Interest.--For purposes of this subsection, the term "personal interest" means any interest allowable as a deduction under this chapter other than--

      (A)  interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee),

      (B)  any investment interest (within the meaning of subsection (d)),

         *   *   *   *   *   *   *

      (D) any qualified residence interest (within the meaning of paragraph (3)), and

         *   *   *   *   *   *   *

   (3)  Qualified Residence Interest.--For purposes of this subsection--

      (A)  In general.--The term "qualified residence interest" means any interest which is paid or
                              (continued...)

---

(...continued)
accrued during the taxable year on--

    (i)  acquisition indebtedness with respect to any qualified residence of the taxpayer, or

    (ii) home equity indebtedness with respect to any qualified residence of the taxpayer.

For purposes of the preceding sentence, the determination of whether any property is a qualified residence of the taxpayer shall be made as of the time the interest is accrued.

(B)  Acquisition indebtedness.--

    (i)  In general.--The term "acquisition indebtedness" means any indebtedness which--

        (I)  is incurred in acquiring, constructing, or substantially improving any qualified residence of the taxpayer, and

        (II) is secured by such residence.

      *  *  *  *  *  *  *

(C)  Home equity indebtedness.--

    (i) In general.--The term "home equity indebtedness" means any indebtedness (other than acquisition indebtedness) secured by a qualified residence to the extent the aggregate amount of such indebtedness does not exceed--

        (I)  the fair market value of such qualified residence, reduced by

        (II) the amount of acquisition indebtedness with respect to such residence.

    (ii)  Limitation.--The aggregate amount

(continued...)

interest, interest allocable to a trade or business (other than the trade or business of performing services as an employee), and qualified residence interest are not personal interest. Sec. 163(h)(2). However, investment interest may be deducted only to the extent that the the taxpayer has net investment income. Sec. 163(d).

Deductions are a matter of legislative grace and are strictly construed. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Independent Co-op Milk Producers Association v. Commissioner, 76 T.C. 1001, 1014 (1981). A taxpayer bears the burden of proving that he or she may deduct the claimed expense.[3] Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

C.   Effective Date of Section 163(h)

Petitioners contend that the personal interest deduction limits of section 163(h) do not apply to interest they paid after

---

[2](...continued)

> treated as home equity indebtedness for any period shall not exceed $100,000 ($50,000 in the case of a separate return by a married individual).

[3]Petitioners called Lee E. Lott (Lott) as an expert witness. Respondent objected because petitioners did not provide an expert witness report before trial as required by Rule 143(f). Petitioners' counsel said that she wanted to ask Lott if petitioners handled their interest deductions correctly on their tax returns. We would have not considered Lott's testimony because it was a legal opinion. Aguilar v. ILWU Local 10, 966 F.2d 443, 447 (9th Cir. 1992); Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 509 (2d Cir. 1977); Estate of Cartwright v. Commissioner, T.C. Memo. 1996-286. Petitioners did not raise this issue on brief; thus we treat it as conceded.

1986 because petitioners bought the Seattle Pump stock, and signed a promissory note for it before the effective date of that section. We disagree.

Section 163(h) applies to taxable years beginning after December 31, 1986. Sec. 511(e) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat 2085, 2249. Petitioners paid the interest at issue in 1989, 1990, and 1991, all of which was during petitioners' taxable years beginning after December 31, 1986.

Petitioners contend that section 162(a)[4] or section 163(a)[5] allows them to deduct the interest at issue here because Congress did not amend those sections when it enacted section 163(h). We disagree. Section 163(h) limits the deduction of personal interest that was previously deductible under section 163(a).

D.    Whether Petitioners May Deduct the Interest At Issue as Trade or Business Interest Under Section 163(h)(2)(A) or Investment Interest Under Section 163(h)(2)(B)

1.    Background

---

[4]Section 162(a) provides, in part:

    (a)  In general. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *.

[5]Section 163(a) provides:

    (a)  General rule. -- There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

Interest paid on indebtedness allocable to a trade or business (other than the trade or business of performing services as an employee) is not personal interest. Sec. 163(h)(2)(A). Investment interest is not personal interest, sec. 163(h)(2)(B); however, investment interest may be deducted only to the extent of the taxpayer's net investment income, sec. 163(d).

Petitioners contend that the interest at issue is allocable to a trade or business, and that it was not the trade or business of performing services as employees. Alternatively, petitioners contend that they may deduct the interest at issue as investment interest under section 163(h)(2)(B). We agree that the interest at issue is investment interest. However, we disagree that petitioners may deduct it because they have not shown that they had any investment income during the years at issue.

2. Whether the Interest at Issue Is Allocable to an Investment or to a Trade or Business

Petitioners contend that the interest at issue is allocable to the trade or business of owning and operating Seattle Pump. Petitioner testified that he bought the stock to get a job for himself and his family and that he believed he was not making an investment when he bought the stock.

Petitioners contend that Miller v. Commissioner, 70 T.C. 448 (1978), supports their position that the purchase of stock in a company to obtain a job is in connection with a trade or business. We disagree. In Miller v. Commissioner, supra, the

taxpayer borrowed money to buy a controlling interest in the stock of a bank so that he could become the bank's president. The corporation paid little or no dividends while the taxpayer owned it. The taxpayer contended that he held the bank stock as part of his trade or business of banking (and not as an investment) because it allowed him to become the bank president. Id. at 453. We concluded that the taxpayer ran the corporation to increase its resale value and that the taxpayer held the stock as an investment.

We recognize that petitioner wanted to work for Seattle Pump; however, like Miller, the objective facts show that petitioners held the stock as an investment, not as part of a trade or business. The stock of Seattle Pump is a capital asset. Petitioner researched the company before buying the stock as a prudent investor would. He learned that Seattle Pump had been profitable. Petitioner believed petitioners paid fair market value for the stock. Payment of fair market value for stock suggests that the stock was held for investment purposes; payment of a price above fair market value would have suggested it was not held as an investment. Id. at 456. Petitioners have held the stock for a relatively long period of time. They have enjoyed the benefits of stock ownership, including control of Seattle Pump. Petitioners will benefit, as any investor would, if the value of the stock rises. Petitioner testified that he

was not counting on stock appreciation, but he did not deny that the value of the stock could rise.

Like the corporation in <u>Miller</u>, Seattle Pump did not pay dividends in the years in issue. We concluded in <u>Miller</u> that the taxpayer held the stock as an investment, even though he bought it so he could become president of the corporation. Similarly, we believe petitioner held Seattle Pump stock as an investment despite the fact that he served as its president.

Petitioners rely on <u>Schanhofer v. Commissioner</u>, T.C. Memo. 1986-166, in which we held that the investment interest limitations under section 163(d) did not apply to interest paid by a taxpayer who borrowed money to buy stock in the company for which he worked. That case is distinguishable. In <u>Schanhofer</u>, the taxpayer paid a substantial premium for stock that was not marketable because of restrictions in beverage permit and franchise agreements. The stock in <u>Schanhofer</u> had minimal growth potential. In contrast, petitioners' sale of the stock of Seattle Pump was not restricted, petitioners paid fair market value for the stock, and they did not show that it has no growth potential.[6]

---

[6] We did not consider section 163(h) in <u>Miller v. Commissioner</u>, 70 T.C. 448 (1978) and <u>Schanhofer v. Commissioner</u>, T.C. Memo. 1986-166, because it had not yet been enacted; we decided whether the interest at issue was limited by section 163(d).

Petitioners' purchase of Seattle Pump stock is not a trade or business. The Internal Revenue Code does not define trade or business for this purpose. Commissioner v. Groetzinger, 480 U.S. 23, 27 (1987); Estate of Yaeger v. Commissioner, 889 F.2d 29, 33 (2d Cir. 1989), affg. T.C. Memo 1988-264. "[T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, supra at 35. The ownership of stocks and bonds is not generally a trade or business under section 162. Higgins v. Commissioner, 312 U.S. 212 (1941)(managing securities investments and collecting income therefrom generally is not a trade or business, regardless of the amount invested, continuity of effort, or amount of time devoted to the activity). The purchase of the stock of one company is not ordinarily an activity of an ongoing trade or business. Id. There is no evidence that petitioners bought any stock other than that of Seattle Pump or that were in a trade or business of buying stock. Devoting one's time and energies to the affairs of a corporation is generally not, of itself, a trade or business of the person so engaged. Whipple v. Commissioner, 373 U.S. 193, 202 (1963).

We conclude that petitioners held the Seattle Pump stock as an investment, not as part of a trade or business. Thus, the

interest at issue does not qualify under the trade or business exception under section 163(h)(2)(A).[7]

### 3. Limitation of Deduction of Investment Interest

The amount of investment interest that a taxpayer other than a corporation may deduct may not exceed the taxpayer's net investment income for the taxable year. Sec. 163(d)(1). Petitioners have not shown that they had any net investment income during the years in issue. There is no evidence that Seattle Pump paid dividends during the years in issue.[8] We conclude that petitioners may not deduct any of the interest at issue as investment interest except as allowed next.

### 4. Phase-In Limitations

Disallowance of the deduction of net investment income interest is phased-in during taxable years 1987 to 1990. Sec. 163(d)(6). Disallowance of personal interest is phased-in for 1987 to 1990 under different rules than for net investment interest. Sec. 165(h)(5). Respondent determined that the interest at issue is personal interest. Consistent with that determination, petitioners should be entitled to an interest

---

[7]In light of this conclusion, we need not decide respondent's contention that petitioners' purchase of Seattle Pump stock was properly allocable to their trade or business of providing services as an employee. See sec. 163(h)(2)(A).

[8]Petitioners do not argue that their wages are investment income under sec. 163(d). Wages received by a shareholder are not investment income under sec. 163(d); wages are compensation for personal services. Sec. 162(a)(1).

deduction that is no less than the amount that would be allowed under personal interest phase-in rules for each year.

E.    Whether Petitioners May Deduct the Interest At Issue as An Expense for the Production of Income Under Section 212

Petitioners contend that they may deduct the interest at issue as an expense for the production of income under section 212. We disagree.

Petitioners asserted without explanation in their pretrial memorandum and posttrial briefs that they may deduct the interest at issue under section 212. Petitioners have not cited (and we are not aware of) any case in which a court disallowed interest deductions under section 163 and allowed them under section 212.

Petitioner testified that petitioners bought Seattle Pump stock so that he and his family could have jobs. Section 1.212-1(f), Income Tax Regs., provides that taxpayers may not deduct under section 212 the costs of seeking employment or placing oneself in a position to begin rendering personal services for compensation. The limits of section 163(d) would be undermined if taxpayers could deduct under section 212 interest which is not deductible under section 163(d).

We conclude that petitioners may not deduct any of the interest at issue under section 212.

F.  Whether Petitioners May Deduct the Interest At Issue as Qualified Residence Interest Under Section 163(h)(2)(D)

Petitioners contend that they may deduct the interest at issue as qualified residence interest under section 163(h)(2)(D) and (3)(A)(ii).  Respondent contends that the interest paid on the notes to Voier was not qualified residence interest.  Respondent also contends that petitioners did not prove the amount of qualified residence interest attributable to the Key Bank loan.

Qualified residence interest is interest that is paid or accrued on acquisition or home equity indebtedness with respect to any qualified residence of the taxpayer.  Sec. 163(h)(3)(A).  Acquisition indebtedness is indebtedness paid to acquire, construct, or substantially improve a qualified residence and is secured by that residence.  Sec. 163(h)(3)(B)(i).  Home equity indebtedness is indebtedness other than acquisition indebtedness that is secured by a qualified residence if the indebtedness is not more than the fair market value of the qualified residence reduced by the amount of acquisition indebtedness for the qualified residence.  Sec. 163(h)(3)(C)(i).

There is no evidence of the fair market value of the residence that petitioners contend is the qualified residence, or the amount of acquisition indebtedness.  There are no facts in the record upon which we may estimate the fair market value or acquisition indebtedness.  In the opening brief, respondent

contended that the amount of qualifying indebtedness cannot be ascertained. Petitioners did not respond to respondent's contention. We conclude that petitioners may not deduct any amount as qualifying residence interest because facts needed to calculate the deduction are not in the record.[9]

G.  Conclusion

Petitioners may deduct interest for each year in issue under the phase-in rules of section 163(d)(6) for investment interest or section 163(h)(5) for personal interest, whichever is greater.

To reflect concessions and the foregoing,

Decision will be

entered under Rule 155.

---

[9]In light of our conclusion, we need not decide respondent's contention that petitioners have not shown that they meet the limitations that apply to home equity indebtedness. We also need not decide petitioners' contention that mortgage interest on their residence is qualified residence interest under section 163(h)(3) because the residence secured the letters of credit that in turn secured their note to Voier.