**Gary WENGER, On Behalf of Himself and All Others Similarly Situated, Plaintiff,**

v.

**LUMISYS, INC., Stephen J. Weiss, Craig Klosterman, John M. Burgess, Linden J. Livoni, Eystein G. Thordarson, Douglas G. DeVivo, Jesse I. Treu, Helios Partners Limited Partnership, Bala S. Manian, Hambrecht & Quist LLC, UBS Securities, Inc. and Volpe Welty & Co., Defendants.**

No. C–97–20609 RMW.

United States District Court, N.D. California.

March 31, 1998.

Alan Schulman, Milberg, Weiss, Bershad, Hynes, Lerach, LLP, San Diego, CA, Jeffrey W. Lawrence, Santa Clara, CA, Richard S. Schiffrin, Schiffrin, Craig, Barroway, LLP, Bala Cynwyd, PA, John K. Gant, for plaintiff.

Stephen Neal, David Lisi, Vincent Colianni, Edwin White, Cooley Godward LLP, Palo Alto, CA, for defendants.

Tower Snow, Paul Bessette, Amy Meldrum, Amy McNamer, Brobeck, Phleger & Harrison, San Francisco, CA, for underwriter defendants.

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE

WHYTE, District Judge.

Before the court are two motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and the Private Securities Litigation Reform Act of 1995 ("Reform Act"). One motion was brought on behalf of defendants Lumisys, Inc. ("Lumisys" or "Company"), Stephen J. Weiss, Craig Klosterman, John M. Burgess, Linden J. Livoni, Eystein G. Thordarson, Douglas G. DeVivo, Jesse I. Treu, Helios Partners Limited Partnership and Bala S. Manian (together,

the "Lumisys defendants"). The other was brought on behalf of defendants Hambrecht & Quist LLC ("Hambrecht & Quist"), UBS Securities, Inc. ("UBS Securities") and Volpe Welty & Co. ("Volpe Welty") (together, the "underwriters"). The court scheduled oral argument for March 6, 1998, but after the parties stipulated to the court's tentative ruling dismissing the complaint in its entirety, no oral argument was held. For the reasons set forth below, the court grants both motions to dismiss with leave to amend.

## I. BACKGROUND

Plaintiff Gary Wenger brings this securities class action lawsuit against Lumisys, six of its officers and directors,[1] two controlling Lumisys shareholders,[2] and three investment banking firms,[3] on behalf of himself and all persons[4] who purchased Lumisys common stock between November 15, 1995, the day of Lumisys' initial public offering ("IPO"), and July 11, 1996, the day Lumisys lowered its revenue expectations for 1996.[5]

Lumisys designs, develops, manufactures, markets and sells medical film digitizer products that permit the transmission and viewing of X-ray, ultrasound and MRI images over computer networks. In his complaint filed on July 10, 1997 ("Complaint"), plaintiff alleges that all defendants violated federal securities laws, specifically § 10(b) of the Securities Act of 1934 ("1934 Act") and Securities and Exchange Commission ("SEC") Rule 10b–5, and that Weiss, Klosterman, Helios Partners, Manian, Treu and Lumisys violated § 20(a) of the 1934 Act. The Lumisys insiders and controlling shareholders allegedly decided to pursue a public offering of Lumisys stock in order to enable them to sell off a

---

1. The individual defendants are alleged to hold the following positions: Weiss, director of the Company, chief executive officer, and a member of its executive committee; DeVivo, chairman of the board and a member of the executive committee; Klosterman, chief financial officer and chief operating officer; Burgess, vice president of sales; Livoni, vice president of engineering; Thordarson, vice president of Lumisys and president of Imagraph; and Treu, director of Lumisys, general partner of One Palmer Square Association, and general partner of Domain Partners, L.P.

2. Helios Partners Limited Partnership and Bala S. Manian.

3. Hambrecht & Quist, UBS Securities and Volpe Welty.

4. Plaintiff excludes defendants, members of their immediate families, and any entity in which a defendant has a controlling interest.

5. Plaintiff also filed a complaint in the Santa Clara County Superior Court identical to the present Complaint, except that the state complaint alleges state law claims. In December 1997, the state court dismissed the state complaint in its entirety. Colliani Supp. Decl. Ex. A.

significant amount of stock at high prices before various adverse facts about Lumisys became public. In addition, an IPO would allow the insiders to sell Lumisys stock to public investors without having to incur a due diligence investigation into Lumisys' business by a sophisticated adversarial buyer. Complaint ¶¶ 3, 4. To accomplish their scheme, Lumisys' insiders and controlling shareholders allegedly sought out the help of the underwriters. The three underwriters all agreed to participate in the scheme in order "[t]o get the underwriting business for Lumisys' IPO." *Id.* ¶ 33. In addition, the underwriters "would pocket millions from the IPO proceeds as the lead underwriters on the IPO and make millions more later by acting as marketmakers in Lumisys stock and by coordinating the sales of the Lumisys' insiders' stock." *Id.* ¶ 6. Plaintiff also alleges that the underwriters were further motivated to participate in the scheme because they had extracted "an illegal agreement that Lumisys would indemnify and hold them harmless from suits for any false statements in connection with the IPO, and also made certain that Lumisys had purchased millions in directors' and officers' liability insurance." *Id.*

The Complaint alleges that defendants made false and misleading statements about Lumisys' products and business prospects in an effort to drive up the price of Lumisys stock following the company's IPO. Their fraudulent scheme allegedly artificially inflated the price of Lumisys stock from an IPO price of $8 per share to a class period high of $30, allowing Lumisys insiders to sell and dispose of their shares of stock at as high as $26½ per share before various problems were revealed and the price fell to about $7 per share.[6]

Plaintiff sets forth a long list of allegedly false and misleading statements made by defendants prior to and throughout the class period, *id.* ¶¶ 54, 55–86, and follows this list with a 12–part paragraph alleging the "true facts" suppressed by defendants, *id.* ¶ 88.

Plaintiff also alleges that these "true facts" "were [. . .] available to the defendants" during and prior to the class period, and that defendants "knew the adverse non-public information about the business of Lumisys as well as its future business prospects via access to internal corporate documents." *Id.* ¶ 27, 88. The Complaint also alleges that each individual defendant "wilfully participated in the issuance of statements which were false and/or misleading." *Id.* ¶ 27. The Complaint centers on allegations that defendants misrepresented the state of one of Lumisys' subsidiaries, Imagraph Corp. ("Imagraph"), as well as the state of Drastic Technologies, Inc. ("Drastic"), a company in which Lumisys had a 20% interest. The Complaint also alleges that the defendants misrepresented product demand and future revenues and earnings per share ("EPS").

The Complaint states that its allegations are "based upon the investigation of [plaintiff's] counsel, which included a review of Lumisys' SEC filings, securities analysts' reports and advisories about the Company, press releases issued by the Company, media reports about the Company, private investigations, information obtained from former employees and discussions with consultants, and, pursuant to [Fed.R.Civ.P.] 11(b)(3), [plaintiff] believes that after reasonable opportunity for discovery, substantial evidentiary support will likely exist for the allegations set forth at ¶¶ 2–7 [the fraudulent scheme], 17 [the "true facts"], 19 [that defendants personally profited by selling their stock at inflated prices], 33 [underwriters' fraudulent scheme], 35–54 [the fraudulent scheme] 79–80 [early release from the 180–day lock-up, Treu's distribution of shares to partners], 88 [a repeat of paragraph 17's "true facts"] and 92 [insider trading]." *Id.* ¶ 114.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

■ The issue to be decided on a motion to dismiss is whether the moving party has

---

**6.** Plaintiff claims that during the class period, defendants sold approximately 1,037,094 shares. Weiss allegedly sold more than 26% of the shares actually owned by him; DeVivo 38%; Klosterman 40%; Burgess 25%; Livoni 32%; Thordarson 100%; Treu 91%; Helios Partners 65%, and Manian 36%. Complaint ¶¶ 19, 26, 92. None of the defendants had sold any of their Lumisys stock before. *Id.* ¶ 94. Approximately 578,000 of these shares were sold or disposed of before the expiration of defendants' 180–day lock-up period. *Id.*

shown beyond a doubt that the opposing party can prove no set of facts in support of its claim entitling it to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984) (citing 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed.1982)). In determining a motion to dismiss, all allegations of the complaint should be construed in the opposing party's favor. *Sun Savings & Loan Assoc. v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987). Moreover, to dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987). Motions to dismiss are therefore generally viewed with disfavor under this liberal standard. *Intake Water Co. v. Yellowstone River Compact Comm.,* 590 F.Supp. 293, 296 (D.C.Mont.1983), *aff'd,* 769 F.2d 568 (9th Cir. 1985), *cert. denied,* 476 U.S. 1163, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986).

■ In cases alleging securities laws violations, motions to dismiss are subject to stricter standards because whether a statement or omission is misleading to potential investors "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact." *Fecht v. Price Co.,* 70 F.3d 1078, 1080 (9th Cir.1995) (citation omitted). Thus, "only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law." *Id.* at 1081 (internal quotations omitted).

## B. Federal Rule of Civil Procedure 9(b)

■ Rule 9(b) applies to actions brought under the federal securities laws. *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1544 (9th Cir.1994). Rule 9(b) provides that "in all averments of fraud and mistake, the circumstances constituting the fraud or mistake shall be pleaded with particularity." Mere conclusory allegations of fraud are insufficient. *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.1989). The allegations must be specific enough "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). A complaint meets this standard if it alleges the time, place and content of the alleged fraudulent representation or omission; the identity of the person engaged in the fraud; and "the circumstances indicating falseness" of "the manner in which [the] representations [or omissions] were false and misleading." *GlenFed,* 42 F.3d at 1547–48. Thus, a plaintiff must provide an explanation as to how an alleged statement or omission was false or misleading when made. *Id.* at 1548.

■ The heightened pleading standard of Rule 9(b) is not an invitation to disregard the requirement of simplicity, directness, and clarity of Fed.R.Civ.P. 8. *McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir.1996). Every plaintiff filing a complaint in a federal district court must prepare his complaint in conformity with Rule 8, which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a), and that "[e]ach averment of a pleading shall be simple, concise, and direct," Fed. R. Civ P. 8(e).

## C. Liability under Section 10(b) and Rule 10b–5

■ Section 10(b) of the 1934 Act makes it unlawful for any person:

To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange[,] . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b–5, enacted thereunder, makes it unlawful "[t]o make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b). To successfully allege a violation of Rule 10b–5, a plaintiff must show (1) a false and misleading statement or omission of material fact; (2) scienter; (3) reliance; and (4) resulting damages. *Paracor Fin., Inc. v. General Elec. Capital Corp.,* 96 F.3d 1151, 1157 (9th Cir.1996).

### D. False or Misleading Statements and Omissions

To state a claim for securities fraud, a plaintiff must plead with particularity the circumstances of the fraud, including the statements made and an explanation as to why or how such statements are false or misleading. Fed. R. Civ. Proc. 9(b); *GlenFed,* 42 F.3d at 1548. Simply because statements are different or conflict does not mean fraud exists. The Ninth Circuit explains:

> The fact that an allegedly fraudulent statement and a later statement are *different* does not necessarily amount to an explanation as to why the earlier statement was false.... In order to allege circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood.

*GlenFed,* 42 F.3d at 1549. To allege falsity, a plaintiff should point to contemporaneous, inconsistent statements by defendants or show that information available to defendants showed different results than defendants predicted. *See id.*

### E. Private Litigation Securities Reform Act

#### 1. Requirements for alleging securities fraud

The Reform Act[7] requires that a complaint in a securities fraud action specify each statement alleged to have been false or misleading. 15 U.S.C. § 78u–4(b)(1)(B). The complaint must also set forth the reason or reasons why the statement was false or misleading. *Id.* To sufficiently plead falsity, the complaint must show (1) facts describing undisclosed problems in detail, and (2) facts showing the problems arose before the allegedly misleading statements were made. *In re Oak Technology Sec. Litig.,* 1997 WL 448168, *5 (N.D.Cal. July 1, 1997); *Hockey v. Medhekar,* 1997 WL 203704, *8 (N.D.Cal. April 15, 1997); *Zeid v. Kimberley,* 973 F.Supp. 910, 920 (N.D.Cal.1997). Next, the complaint must state with particularity the facts which give rise to a "strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

#### 2. Safe harbor for forward-looking statements

With respect to forward-looking statements, defendants cannot be held liable if the forward-looking statement was "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement" or if plaintiff fails to prove that the statement was made with "actual knowledge" that it was false or misleading. 15 U.S.C. § 78u–5(c)(1).

## III. ANALYSIS

### A. Plaintiff's Motion to Strike Lumisys' Conference Call Transcripts

Lumisys has requested the court take judicial notice of the transcripts of two conference calls it held with investors and securities analysts, one on February 1, 1996 (the "February Call"), and another on April 11, 1996 (the "April Call").[8] Plaintiff has moved to strike these transcripts. Lumisys wishes to bring these transcripts to light because

---

7. Plaintiff argues that the Reform Act, enacted December 22, 1995, does not apply to statements alleged to have been made before that date. This argument has no merit. The Reform Act applies to all statements alleged in actions filed after December 22, 1995. *Genna v. Digital Link,* 96–20867, slip op. at 8 (N.D.Cal. Sept. 11, 1997); *In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746 (N.D.Cal. 1997); *Hockey v. Medhekar,* 1997 WL 203704 (N.D.Cal. April 15, 1997).

8. Plaintiff also moves to strike Lumisys' submission of documents filed with the SEC, specifically Form 4s which show the actual number of shares Lumisys insiders sold during the class period. This request is denied. *See In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746, 759 (N.D.Cal.1997) ("Plaintiffs cannot preclude consideration of defendants SEC forms by artful pleading.")

they allegedly demonstrate (1) that plaintiff has grossly mischaracterized many of the statements alleged to have been made during those two calls, and (2) the April Call transcript reveals that the Company delivered a safe harbor warning before making earnings and revenue projections. Klosterman Decl. Ex. B, C.[9]

Plaintiff paraphrases Weiss and Klosterman as representing that Imagraph's ICE Clarity product was being successfully developed and that Lumisys' investment in Drastic was succeeding. However, according to the partial February Call transcript, Klosterman stated that the ICE project had "slipped," and that volume shipments would not occur until the latter half of the year. *Id.* Ex. C. The April transcript indicates that Klosterman stated:

> We also began some initial beta shipments of the Imagraph ICE product. As previously stated, we do not expect any significant volume shipments of the ICE product before late 1996, due to the delay in the product launch and the lag time of the OEM sales cycle.

*Id.* Ex. B. With regards to Drastic, Klosterman made the following statement in the February Call:

> [Drastic's product] is expected to include the Imagraph ICE compression board and is a first step in moving the Imagraph products more into the systems business. The product has applications in cardiology, advertisement insertion for the cable TV market and the film editing business. Lumisys spent $300K for both the minority position and a five-six month option to purchase the remaining portion of the company. A decision to exercise this option would probably occur in the second quarter of 1996.

*Id.* Ex. C. In the April Call, he stated:

> Lumisys continues to monitor its minority investment in Drastic Technologies in the progress of its disk-based VCR product. Drastic is currently running somewhat un-

derplanned, but appears to be well positioned for the NAB, which is the National Association of Broadcasters trade show taking place next week in Las Vegas. Lumisys retains a buy-out option for the remainder of Drastic's equity. This option is currently scheduled to expire during the second quarter.

*Id.* Ex. B.

The Complaint also alleges that Lumisys did not deliver any safe harbor warning at the April Call. Complaint ¶ 98. However, the April transcript indicates that Klosterman prefaced his announcements with a safe harbor warning:

> Good afternoon, and thank you for joining us today. As in most presentations, the following discussion contains forward looking statements, and our actual results may differ materially from those discussed here. Additional information concerning factors that could cause such a difference can be found in the report on Form 10K in the year ended December 31st, 1995.

Klosteman Decl. Ex. B.[10]

Plaintiff argues that the recent Ninth Circuit case of *Cooper v. Pickett*, 137 F.3d 616 (9th Cir.1997), precludes this court from considering any conference call transcripts that are not mentioned in the complaint. *Cooper*, a pre-Reform Act case, held that on a motion to dismiss, a court cannot consider conference call transcripts submitted by the defendants, where those transcripts were not expressly mentioned or referred to in plaintiffs' complaint and where the plaintiffs disputed the authenticity and accuracy of the transcripts and objected to their use. 137 F.3d at 616. Plaintiff notes that while he did allege certain statements made during the three conference calls, he, like the plaintiffs in *Cooper*, did not reference or mention the conference call *transcripts* in the complaint.

---

9. Defendants also submitted an audio tape of the April Call. Klosterman Decl. Ex. A.

10. The Form 10–K contained a detailed section entitled "Risk Factors." This section discussed product delays at Imagraph, component part shortages, the ability to develop new products to

meet changing demand, and the ability to successfully integrate Imagraph, among other things. In addition, the 10–K specifically cautioned that there can be no assurance that Lumisys "will, or may in the future, realize any benefits as a result of [the Imagraph Acquisition]."

### 1. Admissibility of the April 1996 safe harbor warning

The Reform Act appears to change the result in *Cooper*, at least with respect to the admissibility of safe harbor warnings conveyed along with the forward-looking statements alleged in a complaint. The Reform Act provides that "the court shall consider ... any cautionary statement accompanying the forward-looking statement, which [is] not subject to material dispute, cited by the defendant." 15 U.S.C. § 78u–5(e). Accordingly, because Plaintiff does not dispute that the Lumisys executives uttered the words of caution reflected in the April Call transcript, the court must consider them.

Although plaintiff apparently concedes that the court may "consider" Lumisys' safe harbor warning, he argues that the projections made in the April Call are not protected by the safe harbor because Klosterman did not couple *each particular* forecast made during that call with a statement both identifying the particular forecast as a forward-looking statement and indicating that actual results might differ materially. The "safe harbor" applies where the statement is "accompanied by a cautionary statement (i) that the particular statement is a forward-looking statement; and (ii) that the actual results might differ materially from those projected in the forward-looking statement." 15 U.S.C. § 78u–5(c)(2)(A). In addition, the statement must be "accompanied by an oral statement that additional information concerning factors that could cause actual results to materially differ from those in the forward-looking statement is contained in a readily available written document, or portion thereof." 15 U.S.C. § 78u–5(c)(2)(B)(i). That written document, or portion thereof, must be identified, and the information therein must identify important factors that could cause actual results to differ materially from those in the forward-looking statement. 15 U.S.C. §§ 78u–5(c)(2)(B)(ii), (iii). Any document filed with the SEC or generally disseminated shall be deemed "readily available." 15 U.S .C. § 78u–5(c)(3).

Plaintiff's entire argument rests on the single word "particular ." Plaintiff argues that "particular" means that *every time* throughout the course of a speech, conference or discussion that an executive projects revenues, predicts earnings, states the objectives of management, or makes a statement concerning future products, the executive must identify the statement as a forward-looking statement and warn that actual results might differ materially. Defendants, on the other hand, urge that the statute's reference to "particular" oral statements is merely meant to confine the reach of the safe harbor to particular oral forward-looking statements made in the course of a single oral presentation. Defendants argue that plaintiff's interpretation of the statute defies common sense and would "bury legitimate projections in statutory white noise and produce the very effect of cloaking disclosures in the type of vague lawyerly language that the Reform Act was designed to obviate."

The court agrees with defendants. First, the unwieldy practice advocated by plaintiff appears contrary to the way in which public companies currently deliver oral forward-looking information, and contrary to the way in which people communicate. A court need not adopt an interpretation of statutory language in a way that leads to absurd or futile results at variance with policy or legislation as a whole. *E.E.O.C. v. Commercial Office Products Co.*, 486 U.S. 107, 120, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988); *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Moreover, the legislative history supports defendants' view. The House Committee described the rule governing oral statements as "flexible" and as no more cumbersome than the rules governing written forward-looking statements. House Conf. Report No. 104–67, 1995 U.S.C.C.A.N. (109 Stat. 737), 744–45. Furthermore, the Senate Committee Report directly stated:

> In the case of oral statements, the Committee expects that the notice will be provided at the outset of any general discussion of future events and that further notice will not be necessary during the course of the discussion.

Senate Report No. 104–98, Pub.L. No. 104–67, 1995 U.S.C.C.A.N. (109 Stat. 737) 679, 696.

Plaintiff goes on to assert that the safe harbor cannot apply because the Com-

plaint alleges that Lumisys also made the forward-looking statements in follow-up one-on-one conversations with conference call participants. *See* Complaint ¶ 72. This argument has no merit. The Complaint does not allege with any specificity who participated in the one-on-one conversations, when they took place, or, most important, the specific content allegedly communicated to the analysts. These allegations do not satisfy the particularity requirements of Rule 9(b) or the Reform Act.

Plaintiff's motion to strike the April Call transcript, to the extent defendants submitted the transcript for the purpose of alerting the court to Lumisys' safe harbor warning, is denied.

### 2. Oral statements of present fact

The more difficult question concerns the admissibility of the transcribed oral statements of present fact, such as statements concerning the status of Imagraph and Drastic. Although the court questions the ongoing vitality of *Cooper* in light of the Reform Act's mandate that courts determine whether a complaint adequately "specifies" each allegedly statement, 15 U.S.C. §§ 78u–4(b)(1), the court need not currently address whether it should consider the transcripts to determine whether plaintiff has inaccurately portrayed Lumisys' statements. As explained in Section III(C)(1), *infra*, with or without reference to outside materials, the bulk of the paraphrased allegations fail to satisfy the particularity requirements of Rule 9(b) and the Reform Act. Accordingly, plaintiff's motion to strike the February and April Call transcripts is granted to the extent defendants offer the transcripts to show that plaintiff has fabricated several of Lumisys' alleged statements.[11]

### B. Structural Deficiencies of the Complaint

The 65–page Complaint fails to conform with the presentation requirements of Rule 8 and the Reform Act. Determining whether "the pleader is entitled to relief" requires a laborious deconstruction and reconstruction of a great web of scattered, vague, redundant, and often irrelevant allegations. The Complaint repeats many allegations three. or four times, often giving them a slightly different flourish at each turn. In violation of the Reform Act's requirement that a complaint must specify the reasons why *each* statement is alleged to have been misleading, the Complaint lumps all alleged misrepresentations together in one unwieldy 14–page segment (the statements span eight months, from November 1995 to June 1996) and then follows that catalog with a three-page laundry list of reasons why *all* the statements were allegedly false when made. *See* Complaint ¶ 88. The Complaint does not indicate which among the 14 pages of statements are alleged to be false, does not follow each allegedly false statement with factors showing it was false, and does not provide any inkling that any statement was false when made except to say that the "true facts" of Paragraph 88 were "available to the defendants" "at the Roadshow and during the Class Period." *Id.* Plaintiff merely throws the statements and the alleged "true facts" together in an undifferentiated clump and apparently expects the reader to sort out and pair each statement with a supposedly relevant "true fact." The predictable demands of reviewing such a complaint abuse judicial resources. "When attorneys admitted to practice in Federal courts prepare complaints, neither the Court nor opposing counsel should be required to expend time and effort searching through

11. The court notes that it may later consider the transcripts in determining whether to impose sanctions on plaintiff's counsel pursuant to Fed. R.Civ.P. 11(b). The Reform Act requires courts, upon final adjudication of any private securities class action, to "record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u–4(c)(1).

Under Rule 11(b)(3), an attorney signing a complaint warrants that the allegations of the complaint have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. In light of the language reflected in the transcripts, it is questionable whether plaintiff's counsel possesses evidentiary support for many of the allegations contained in the Complaint.

large masses of conclusory, argumentative, evidentiary and other extraneous allegations in order to discover whether the essentials of claims asserted can be found in such a melange." *Silver v. Queen's Hospital,* 53 F.R.D. 223, 226 (D.Haw.1971). "It is the duty and responsibility, especially of experienced counsel, to state those essentials in short, plain and non-redundant allegations." *Id.*

In the context of securities class action complaints, courts have repeatedly lamented plaintiffs' counsels' tendency to place "the burden [ ] on the reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiffs' claims." *Oak,* 1997 WL 448168, *5; *see also GlenFed,* 42 F.3d at 1554 (These "puzzle-style" complaints are an "unwelcome and wholly unnecessary strain on defendants and the court system."); *May v. Borick,* 1997 WL 314166, *8 (C.D.Cal. Mar. 3, 1997) ("[The complaint's] organization obfuscates rather than clarifies. Plaintiff's failure to address defendants' allegedly misleading statements individually, or even by category, and to state why each statement, or category of statements is misleading, renders this Court's task, and the task of the defendants, excessively difficult."); *Strassman v. Fresh Choice,* 1995 WL 743728, *4 (N.D.Cal. Dec. 7, 1995) ("The FAC's deficiencies do not stem simply from its length, but rather from its requirement that the reader find the needle in the haystack."); *Chan v. Orthologic Corp.,* Civ. No. 96–1514 PHX–RCB, 28 n. 11 (D.Ariz. Feb. 5, 1998) (By dumping long lists of "specific" reasons into the complaint, the plaintiff "make[s] a mockery of Rule 9(b) and the Reform Act."); *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 178 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 412, 139 L.Ed.2d 315 (1997), ("A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail. The amended complaint here, although long, states little with particularity."); *Zeid,* 973 F.Supp. at 918 ("This method of pleading imposes an unnecessary burden on Defendants and the Court to sort out the alleged misrepresentations and match them with the corresponding 'adverse facts.' "); *In re Con-*

*ner Peripherals, Inc.,* 1996 WL 193811, *1 (N.D.Cal.1996) ("The complaint as written requires the court to excavate for actionable claims.... Judicial resources are too scarce and worthy cases too pressing for a court to spend its time rooting around in bloated complaints drafted by experienced lawyers for a handful of actionable allegations."); *Shuster v. Symmetricom, Inc.,* 1997 WL 820967, *1 (N.D.Cal. June 25, 1997) ("The Complaint as it now stands is a rambling set of allegations which is almost impossible to effectively review.... Plaintiff sets forth lengthy quotes from various releases by defendants' officers and a securities analyst but does not make clear what portion of each quote constitutes a false representation."); *Kane v. Madge Networks, N.V.,* 96–20652 RMW (N.D.Cal.1997) ("This maze-like style renders it almost impossible to determine the sufficiency of plaintiffs' explanations as to why the alleged statements were false or misleading when they were made."); *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 932–33 n. 9 (9th Cir.1996).

The court finds that plaintiff has failed to set forth a "short and plain statement" of his claims in violation of Rule 8(a) and has failed to make each allegation "simple, concise and direct" in violation of Rule 8(e). Moreover, in contravention of the Reform Act, plaintiff has failed to craft a Complaint in such a way that a reader can, without undue effort, divine why each alleged statement was false or misleading. Accordingly, this court must dismiss the Complaint for failure to comply with the requirements of Rule 8 and the Reform Act, 15 U.S.C. § 78u–4(b)(1).

■ Further, to the extent that any of plaintiff's allegations are understood to be pled on information and belief, the Complaint must be dismissed in its entirety. Nowhere in the Complaint does plaintiff state, with or without particularity, any facts on which any particular belief is formed. This is a direct violation of the Reform Act, 15 U.S.C. § 78u–4(b)(1).

**C. The Lumisys Defendants' Motion to Dismiss**

■ The vast majority of the alleged misrepresentations are statements of historic fact, vague and general statements of opti-

mism, and publicly known facts, and as such, are simply not actionable.

██ Disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future. *In re Sofamor Danek,* 123 F.3d 394, 401 n. 3 (6th Cir.1997). Typical of the apparently accurate statements of historic fact alleged by plaintiff are the following:

- "Lumisys also develops, manufactures and markets high-quality, board-level digitization and compression products for the capture of video images." Complaint ¶ 55 [Prospectus].
- "The Imascan products consist or a line of monochrome and color video frame grabbers with SVGA display capabilities on a single board." *Id.* ¶ 56 [Prospectus].
- "The company is developing an integrated compression engine ("ICE") product." *Id.*
- "Sales for the fourth quarter of 1995 were $5,571,000, an increase of 112% over $2,630,000 reported in the same period last year." *Id.* ¶ 62 [February 1, 1996 press release].
- "Recently, the company acquired a minority stake ... in Drastic Technology, a private company developing a digital VCR recorder that reads and writes digitized images directly into hard disk." *Id.* ¶ 64 [UBS Securities report].
- "The acquisition of Imagraph expanded our product line to include video capture digitizers and data compression boards." *Id.* ¶ 67 [Annual Report].
- "Drastic is in the process of developing a disk-based video recorder for use in the medical, cable and broadcast markets." *Id.* ¶ 70 [Form 10–K].
- "Sales for the first quarter were $5,110,000, an increase of 113% over $2,404,000 reported in the same period last year." *Id.* ¶ 71 [Q1 1996 Press Release].
- "Lumisys Inc. shares rose as much as 16 percent, extending gains made after the company posted better-than-expected earnings last week." *Id.* ¶ 75 [Story on Bloomberg].

██ Vague statements of opinion are not actionable under the federal securities laws because they are considered immaterial and discounted by the market as mere "puffing." *Raab v. General Physics Corp.,* 4 F.3d 286, 288–90 (4th Cir.1993). "No matter how untrue a statement may be, it is not actionable if it is not the type of statement that would significantly alter the total mix of information available to investors." *Fisher v. Acuson Corp.,* 1995 WL 261439, *3 (N.D.Cal. Apr. 26, 1995). Vague, amorphous statements are not actionable because reasonable investors do not consider "soft" statements or loose predictions important in making investment decisions. *Raab,* 4 F.3d at 289–90; *see also In re Gupta Corp. Sec. Litig.,* 900 F.Supp. 1217, 1236 (N.D.Cal.1994) (holding nonactionable a. company's statement that "business couldn't be better," "it's a great time for a company like ours," and "we already have a sizable lead over our competition"). Typical of the nonactionable vague and general statements of optimism alleged in the present Complaint are the following:

- "LUMI represents a pure play in the emergence of teleradiology networks, finally coming of age." Complaint ¶ 58 [UBS report].
- "We're the leader in a rapidly growing market." *Id.* ¶ 61 [January 8, 1996 Healthcare Conference].
- "We were able to perform two successful acquisitions last year...." *Id.*
- "We have the convergence of the health care trends.... Lumisys is positioned at the crest of those two converging trends." *Id.*
- "We have an extremely broad product line. We cover the waterfront." *Id.*
- "Fundamentally, we're just a good company, we know our markets very well, we dominate these markets, we have good people, a good management team, and we're positioned to move forward now." *Id.*
- "The acquisition of both XRS and Imagraph have allowed Lumisys to extend our high quality product offerings to better serve our customer's needs. We look forward to continually improving our

performance." *Id.* ¶ 62 [February 1, 1996 press release].

- "1995 was a very good year for Lumisys. . . . Lumisys introduced five new products . . . the acquisition of Imagraph expanded our product line to include video capture digitizers and data compression boards . . . ." *Id.* ¶ 67 [1995 Annual Report].

As the court found in *Raab*, no reasonable investor would rely on such vague statements, "and they are certainly not specific enough to perpetrate fraud on the market." 4 F.3d at 290. Plaintiff argues that even optimistic statements can be actionable if defendant knew them to be false. But here, plaintiff has not alleged any of these vague statements to be false, much less that any defendant knew them to be false.

■■■ Similarly, a company cannot be held liable for failing to educate the public about publicly known facts. *Howard Gunty Profit Sharing v. Quantum Corp.*, No. 96–20711, 1997 WL 514993, *4 (N.D.Cal. Aug. 14, 1997); *In re SciClone Pharmaceuticals Sec. Litig.*, No. C 94–1485 SBA, slip op. at 20 (N.D.Cal. Mar. 10, 1995) (defendants cannot be held liable for "failing to educate the public about [the] potential impact on [the] company of publicly known facts"). Plaintiff alleges several publicly known facts, many incorporating vague statements of optimism, such as the following:

- "We believe LUMI's sales will mirror the growth of the teleradiology market as it expands over the next several years, driven by the rapid growth of digital radiological services, cost containment pressures and increased subspecialization within the radiology industry. Complaint ¶ 58 [Prospectus].
- "Lumisys expected this strong demand to continue for years." *Id.* ¶ 72[April 1996 conference call.

Having dismissed the bulk of plaintiffs' allegations as immaterial, the court will address in some detail the inadequacies of the alleged "false statements" relating to Lumisys' Imagraph subsidiary and its products, Lumisys' investment in Drastic Technologies, Lumisys' representations concerning the demand for its core digitizer products, and various 1996 revenue and earnings projections. The court will then explain how the Complaint fails to adequately allege any statement was false when made or to adequately allege scienter.

### 1. Paraphrased statements

■■■ The Complaint alleges a number of paraphrased statements taken from three oral presentations: the pre-IPO Roadshow,[12] the February Call, and the April Call. Plaintiff does not provide any direct quotations, but rather portrays Lumisys' alleged disclosures in vague terms. For example, plaintiff characterizes Weiss and Klosterman as representing that Lumisys' business was performing very well and ahead of plan, with strong demand for its core digitizer products, that Imagraph's Imascan Precision product was succeeding and selling well, that Imagraph was successfully developing the ICE Clarity, which would contribute to strong 1996 revenue growth for Lumisys, that Imagraph was doing very well, that Lumisys' investment in Drastic was succeeding, and that Drastic's digital video recorder was doing well in BETA testing. *Id.* ¶¶ 54, 63, 70, 72.

The allegations lack the specificity required by Rule 9(b) and the Reform Act. Rather than "stating with particularity" the content of the alleged fraud, pursuant to Fed.R.Civ.P. 9(b), and "specifying each statement alleged to have been misleading," as required by the Reform Act, 15 U.S.C. 78u–4(b)(1), plaintiff repackages defendants' actual oral statements in vague and impressionistic terms. Plaintiff does not allege that Weiss or Klosterman *actually* said that the Imascan Precision "was succeeding" or "was selling well," or that "Imagraph was successfully developing ICE Clarity," or that "Ima-

---

**12.** All allegations regarding the pre-IPO Roadshow presentations must be dismissed in any event. While the complaint alleges that Lumisys and the underwriters undertook a Roadshow to five different cities from October 25, 1995 to November 5, 1995, the complaint fails allege any misstatement with specificity, and does not mention the time, place, or date on which any particular misstatement was allegedly made. *See In re Valence Technology Sec. Litig.*, 1996 WL 37788, *9–10 (N.D.Cal. January 23, 1996).

graph is doing very well," or that "Lumisys' investment in Drastic was succeeding," or that "Drastic's digital video recorder was doing well in BETA testing," or that "Lumisys enjoyed strong demand for its core film digitizer products." What did Weiss and Klosterman actually say about Imagraph, Imascan Precision, ICE Clarity, Drastic, or product demand? Plaintiff does not inform us.

Courts hold this impressionistic approach to pleading fraud deficient. *See, e.g., Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 178–79 (5th Cir.1997) (complaint that alleged defendant's representative had orally "encouraged the perception of a landfill crisis," but did not allege the specific content of those oral statements, insufficient under Rule 9(b)); *In re Alliance North American Government Income Trust, Inc. Sec. Litig.,* 1996 WL 551732, *10 (S.D.N.Y. 1996) (complaint that alleged recorded statements made available through an 800 number "reassured investors that the assets of the Fund were secure," but did not allege the specific statements made through the 800 number, insufficient under Rule 9(b)). While paraphrased portrayals of oral statements may suffice where the statements' content concerns specific matters (i.e., "the seller said the house had new copper plumbing"), a purchaser's bare impression of an unspecified oral statement (i.e., "the seller told me the house was good") is inadequate under Rule 9(b) and the Reform Act. The statements discussed here fall into the latter category and must be dismissed.

Although the requirements of Rule 9(b) may at times be "relaxed as to matters peculiarly within the opposing party's knowledge" in cases of corporate fraud, *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987), the content of Lumisys' publicly made statements are not matters peculiarly within the Company's knowledge. As such, the court will not relax the pleading standards of Rule 9(b). Moreover, none of these "statements" appears in any of the reports alleged to have been released to the marketplace. "As such, these statements, if they were made, never reached the market and therefore, are not actionable." *Zeid,* 973 F.Supp. at 919–20.

Assuming any of these statements had been sufficiently drawn, plaintiff's amorphous and conclusory allegations of falsehood do not satisfy the particularity requirement of Rule 9(b) or the Reform Act. Plaintiff alleges that the "true facts" were that Imagraph suffered serious management problems, that top management was incompetent, the Imagraph did not have an executive in charge of engineering, the subsidiary was overwhelmed by a large number of new products, new products were delayed, Imagraph's progress was slowed by the need to redesign products to be compatible with a redesigned third-party microchip, that production problems at Imagraph required that Lumisys write off defective component parts, that Lumisys' investment in Drastic was a failure, and that Drastic's product suffered from substantial defects. *Id.* ¶ 88. Plaintiff does not explain the precise nature of Imagraph's "serious management problems," indicate which members of Imagraph's top management team were incompetent, and why, state which Imagraph products were delayed, and for how long. Plaintiff does not allege the name of the third-party microchip, which products the chip redesign affected, nor quantify the ensuing delay. Nor does plaintiff specify the "substantial defects" in Drastic's products. Finally, even if plaintiff could allege that Lumisys had actually stated that "Lumisys enjoyed strong demand for its core film digitizer products," plaintiff alleges no facts demonstrating falsity, except the vague and conclusory assertion that Lumisys "was encountering ... a slowdown in demand for its core digitizer products." *Id.* ¶ 88(k). Moreover, none of the "true facts" are necessarily inconsistent with the alleged representation that Imagraph "was doing very well." All businesses from time to time suffer management problems and product delays, but many manage to "do very well" despite these commonplace business wobbles. In any event, such vague statements "are certainly not specific enough to perpetrate fraud on the market." *Raab,* 4 F.3d at 290. Plaintiff's claims of falsehood fall far short of satisfying the requirements of Rule 9(b) and the Reform Act.

### 2. Other statements about Imagraph and Drastic

■ Plaintiff does set forth several sufficiently detailed alleged misstatements regarding Imagraph's products and Drastic. Plaintiff fails, however, to adequately allege any of them to be false. For example, the Complaint alleges that the November 1995 Prospectus and the March 1996 Form 10–K stated that "Imascan Precision is the most recent addition to [the frame grabber] family and integrates the most advanced features offered by this product line." *Id.* ¶¶ 56, 70. Plaintiff alleges that in reality, the Imascan Precision was not ready for commercial release at the time of Lumisys' IPO, and that Imagraph was "encountering serious and persistent difficulties" in developing the Imagraph Precision. *Id.* ¶¶ 88(e), (g). These allegations of falsehood are insufficient. The Prospectus does not state that Lumisys had sold a single unit of the product, or that Lumisys anticipated generating any revenues from the product at any particular time. Plaintiff does not provide any detail about the problems affecting the development of the product or when it became available "for commercial release." Such omissions are fatal under Rule 9(b) and the Reform Act.

With regard to the ICE Clarity product, the Prospectus states that Lumisys "is also developing an integrated compression engine ("ICE") product, and the Form 10–K states that "[t]he board level ICE product will offer" a cost-effective solution. *Id.* ¶¶ 57, 70. Plaintiff alleges that in reality, Imagraph encountered serious and persistent difficulties and delays in developing ICE Clarity for commercial production, which would negatively impact Lumisys' results. *Id.* ¶ 88(g). Because the Prospectus and Form 10–K reveal that the ICE Clarity was under development and not yet completed, Lumisys' public comments about ICE Clarity are consistent with the "true facts" alleged by plaintiff. Additionally, plaintiff's conclusory charges of falsity fail to state a claim. As to Lumisys' alleged statement that it anticipated it would acquire the rest of Drastic later in 1996, plaintiff has provided no facts indicating this statement was false when made.[13]

In sum, all of plaintiff's allegations concerning Imagraph, its products, Drastic, and general product demand must be dismissed for failure to plead with the specificity required by Rule 9(b) and the Reform Act.

### 3. Revenue and earnings projections

#### i. Lumisys' projections

■ During the pre-IPO Roadshow, Lumisys allegedly projected 1996 sales to be at least $25–$26 million and 1997 sales to be at least $29–$30 million. *Id.* ¶ 54. In the February Call, Lumisys allegedly forecasted 1996 revenues of at least $25 million, and increased its 1996 EPS forecast from $.51 to $.55–$.56. *Id.* ¶ 63. In the April Call, Lumisys forecasted 1996 revenues of close to $26 million and 1996 EPS of $.55–$.57.[14] *Id.* ¶ 73.

Lumisys lowered its earnings estimates on July 11, 1996. The Complaint does not provide the specific figures projected that day. About six months later, in January 1997, Lumisys reported its 1996 results. Lumisys reported 1996 revenues of $23,022,000 [15] and an EPS of $.50. *Id.* ¶¶ 89, 91. Plaintiff does not dispute that these results were consistent with the numbers forecasted in July 1996.

As stated in Part III(A)(1), *supra*, the safe harbor provision of the Reform Act protects Lumisys from liability for the contents of the April forecast Accordingly, the only potentially actionable projections made by Lumisys are those allegedly delivered at the pre-IPO Roadshow [16] and in the February Call.

---

13. Plaintiff also alleges that UBS Securities reported on February 2, 1996 that it was "feasible" for Drastic to reach profitability by about August 1996. Complaint ¶ 64. Plaintiff does not allege that Lumisys adopted that report. In any event, plaintiff alleges no facts showing that profitability was not feasible at the time UBS Securities issued this statement, presumably based on communications from Lumisys.

14. Plaintiff also refers to forecasts for 1997 and 1998. As the defendants argue, these forecasts are not actionable. Plaintiff never alleges the forecasts were false, and provides no facts indicating that defendants lacked a reasonable basis for the projections.

15. Plaintiff alleges that this figure includes about $13 million interest income on the proceeds of the IPO. Complaint ¶ 89.

16. No statements made during the Roadshow are actionable in any event. See footnote 13.

These projections are not actionable because Lumisys' results were pretty much what Lumisys had allegedly predicted. The difference between the projected sales of $25 million and actual sales of $23,002,000 million is insignificant. Similarly, the differences between projected EPS of $.55 and actual EPS of $.50 is immaterial. *See In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 514 (9th Cir.1991) (holding revenue approximately 10% below estimates immaterial). More significantly, plaintiff does not plead any facts which tend to show that the projections lacked a reasonable basis at the time they were made or were not issued in good faith. *See GlenFed*, 42 F.3d at 1549. The court elaborates on this omission at Section III(A)(2), *infra.*

### ii. Forecasts in analysts' reports

 Defendants contend that plaintiff fails to state a claim against Lumisys on the basis of the statements contained in the analysts' reports. To the extent the Complaint alleges that Lumisys is liable for misrepresentations made to securities analysts, a plaintiff seeking to impose liability under 10b–5 based on the first theory must show that the corporation knowingly provided false or misleading information to third-party analysts. *Cooper*, 137 F.3d at 622–23 (citing *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir.1996)). Because plaintiff has failed to show that Lumisys provided any false or misleading information to analysts, plaintiff cannot prevail on this theory.

 To the extent that plaintiff alleges that Lumisys is liable for analysts' interpretation of defendants' truthful statements, a plaintiff seeking to impose liability based on this theory must show that defendants have put their "imprimatur, express or implied, on the projections." *In re Stac Electr. Sec. Litig.*, 89 F.3d 1399, 1410 (9th Cir.1996) (citing *In re VeriFone Sec. Litig.*, 784 F.Supp. 1471, 1486 (N.D.Cal.1992), *aff'd*, 11 F.3d 865 (9th Cir.1993)). For example, a defendant is sufficiently entangled when he has reviewed the analysts' forecasts, and by his activity, made an implied representation that the information is true or at least in accordance with the company's views. *In re Caere Corp. Sec. Litig.*, 837 F.Supp. 1054, 1059 (N.D.Cal.1993). Merely providing analysts with historical information and correcting factual inaccuracies is not sufficient. *Id.* Since the allegation of entanglement is central to the overall allegation of securities fraud, it must be plead with the degree of specificity required under Rule 9(b). *Caere*, 837 F.Supp. at 1059. The pleading should (1) identify the specific forecasts and name the insider who adopted them; (2) point to specific interactions between the insider and the analyst which allegedly gave rise to the entanglement; and (3) state the dates on which the acts which allegedly gave rise to the entanglement occurred. *Id.* (citing *GlenFed*, 11 F.3d at 848; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987); *Verifone*, 784 F.Supp. at 1487).

Plaintiff alleges Lumisys adopted three allegedly misleading analyst reports: a April 15, 1996 Montgomery Securities report authored by Yaffe (forecasting 1996 EPS of $.56 and 1996 revenues of $26.1 million); a June 19, 1996 Volpe Welty report authored by Dunn (forecasting 1996 EPS of $.57 per share), and a June 24, 1996 UBS Securities report authored by Navarro (forecasting 1996 EPS of $.57). Complaint ¶¶ 77, 85, 86. Plaintiff contends that defendants adopted these three reports because the authors each "spoke with Weiss and Klosterman and relied upon and utilized information provided to [the authors] by them." *Id.* ¶¶ 77, 85, 86. Plaintiff further alleges that "[a]fter th[ese] report[s] w[ere] published, Lumisys copied the report[s] and publicly distributed [them], thus endorsing [them] and adopting [them] as its own." *Id.* ¶¶ 77, 85, 86.

 The Lumisys defendants submit that plaintiff has failed to allege sufficient facts to support his adoption theory. While plaintiff does allege that the three reports were prepared based on information provided by Weiss and Klosterman, plaintiff does not allege that Lumisys approved of the reports before they were issued, or allege with adequate specificity how Lumisys distributed the reports subsequent to their publication. The statements contained in the analysts' reports may not be attributed to Lumisys.

Even assuming plaintiff had adequately pled entanglement, he has failed to sufficiently allege that defendants knew that the ana-

lysts' forecasts were unreasonable when they were issued. An analyst's forecast is unreasonable only if there was no reasonable basis for it at the time at which it was made. *Caere*, 837 F.Supp. at 1060 (citing *Wielgos v. Commonwealth Edison*, 892 F.2d 509, 516 (7th Cir.1989); *Verifone*, 784 F.Supp. at 1487). It is not enough that the forecast merely turned out to be wrong. *Id.* Further, because unreasonableness of the reports is central to the allegation of scienter, the facts supporting the allegation must "provide a strong inference of fraudulent intent." *Id.* (citing *GlenFed*, 11 F.3d at 848). Plaintiff's allegations do not do so.

### 5. Plaintiff does not allege that any statement was false when made

■ Assuming that any of the alleged misrepresentations could be construed as false, the Complaint would still fail because plaintiff alleges no facts indicating that any of the alleged "true facts" arose before the allegedly misleading statements were made. *See Oak*, 1997 WL 448168 at *5; *Hockey*, 1997 WL 203704 at *8; *Zeid*, 973 F.Supp. at 920. Paragraph 88 only alleges that the myriad of "true facts" "were ... available to the defendants" during and prior to the class period. *Id.* ¶ 88. This conclusory allegation does not amount to a fact showing that any of the "true facts" arose prior to any related statement. As the post-Reform Act cases have emphasized, without specific references to specific facts demonstrating that the statements at issue were false or misleading when made, allegations regarding adverse information supposedly known to defendants are merely "speculation and conclusions drawn from hindsight." *See, e.g., Zeid*, 973 F.Supp. at 920–21; *see also Genna v. Digital Link*, 96–20867, slip op. at 16 (N.D.Cal. Sept. 11, 1997) (allegations that the product was "encountering serious and persistent difficulties," the software "did not work," and the product had "design and software problems" were so general that the court could not be sure that plaintiff was not basing his claim on

hindsight). The present Complaint rests on conclusory allegations of product delays and management problems, and fails to plead any specific contemporaneous facts demonstrating falsity.

■ As for the earnings and revenue projections, the Complaint alleges no specific contemporaneous facts showing that the defendants lacked a reasonable basis for its predictions. Even before the Reform Act, courts recognized that a projection or forecast of future results is actionable only if the Complaint alleges specific facts showing the defendant lacked a reasonable basis for its prediction. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir.1989), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990). "[T]he fact that a prediction proves to be wrong in hindsight does not render the statement untrue when made." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 925 (9th Cir.1996). To adequately plead fraud based on forecasts, plaintiff must allege specific, contemporaneous facts showing why it was unreasonable for Lumisys to believe it would achieve its projections. *See In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir.1996); *see also GlenFed*, 42 F.3d at 1549 (holding that plaintiffs must show that the difference between a forecast and actual results is "not merely the difference between two permissible judgments, but rather the result of a falsehood"); *Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir.1994) (holding that plaintiff must identify "with specificity why the discrepancy between a company's optimistic projections and its subsequently disappointing results is attributable to fraud").

Indeed, as defendants point out, plaintiff's Complaint appears to be a transparent attempt to take disclosures made by Lumisys on July 11, 1996 and then regurgitate these late 1996 announcements as "facts" known to the defendants throughout the class period.[17]

---

**17.** On July 11, 1996, Klosterman allegedly reported the following:

"Imagraph ... had too many new products in the pipeline, and engineering really became overburdened, and, in that process, all the products essentially became delayed. So [...] we eliminated one of the new products, we

refocused engineering. We also went in and changed management. We took the VP of operations and finance and promoted that person to be the acting general manager. We hired a new VP of sales and marketing, and we also hired a new VP of engineering, which previously did not exist...." Complaint ¶ 90.

#### 6. Plaintiff does not allege scienter

 The Complaint alleges that each individual defendant "knew the adverse non-public information about the business of Lumisys as well as its future business prospects via access to internal corporate documents" and that each individual defendant "wilfully participated in the issuance of statements which were false and/or misleading." Complaint ¶ 27. Beyond these conclusory allegations, plaintiff points only to the individual defendants' stock sales as proof of scienter.

 The Complaint fails to plead facts that show a strong inference of fraud.[18] The Complaint contains only generalized, boilerplate allegations that the defendants "knew" of the adverse undisclosed facts "via access to internal corporate documents." Plaintiff does not point to any specific internal reports or documents showing Lumisys knew any of its statements were false. Moreover, stock sales alone cannot create a strong inference of scienter. *Silicon Graphics*, 970 F.Supp. at 768. Even if stock sales alone sufficed, the sales here do not appear unusual nor suspicious. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2nd Cir.1995) (sales must be unusual or suspicious to raise inference of fraud). Lumisys' officers retained the vast majority of their holdings and none of the sales occurred at suspicious times, such as immediately before a negative earnings announcement. With regard to Treu and Domain Partners, they never sold any shares, but simply distributed them to Domain's limited partners investors. Moreover, the fact the defendants had not traded before is of no moment whatsoever because the lock-up prevented earlier trades.

#### D. The Underwriters' Motion to Dismiss

 The Complaint alleges that the underwriters issued various misleading reports about Lumisys'. financial prospects, orchestrated the Roadshow, and participated in the issuance of the Prospectus.[19] As shown above, plaintiff fails to demonstrate anywhere in the Complaint that the Company—much less the underwriters—was aware of any allegedly "adverse" information at the time the Prospectus was issued. The Complaint does not allege how the allegedly adverse information the underwriters purportedly knew at the time of their statements provided them with actual knowledge that Lumisys would not generate earnings in line with their analysts' estimates.

Moreover, plaintiff has failed to allege a strong inference of fraud on the part of the underwriters. Plaintiff alleges various motives behind the underwriters' decisions to participate in the "scheme": they all agreed to participate in the scheme in order "[t]o get the underwriting business for Lumisys' IPO," they would "pocket millions from the IPO proceeds as the lead underwriters on the IPO and make millions more later by acting as marketmakers in Lumisys stock and by coordinating the sales of the Lumisys' insiders' stock," and the indemnity agreement further motivated them to participate in the scheme. Complaint ¶¶ 6, 33. Permitting plaintiffs to allege scienter based on these routine components of underwriting services would "effectively eliminat[e] the

---

**18.** An open question under the Reform Act is whether its pleading requirements for scienter are those adopted by the Second Circuit prior to the adoption of the Reform Act or whether the Act intends an even more stringent standard. The question need not be answered in this order because plaintiff's current Complaint fails to meet the pre-Reform Act Second Circuit rule that a strong inference of fraud is adequately pleaded if the Complaint pleads with particularity specific facts that either (1) constitute evidence of either reckless or conscious behavior, or (2) establish a motive and an opportunity to commit fraud. *See In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 269 (2d Cir.1993).

**19.** Plaintiff cites to nine different analysts' reports. On December 11, 1995, UBS Securities issued a pre-IPO report forecasting 1996 EPS of $.51, Hambrecht & Quist issued a report forecasting 1996 revenues of $25.8 million and 1996 EPS of $.52, and Volpe Welty issued a report forecasting 1996 revenues of $25 million. *Id.* ¶¶ 58–60. On February 2, 1996, UBS Securities issued a report forecasting 1996 EPS of $.55, and Hambrecht & Quist issued a report forecasting 1996 revenues of $25.8 million and 1996 EPS of $.56. *Id.* ¶¶ 64–65. On April 12, 1996, UBS Securities issued a report forecasting 1996 EPS of $.57, and Hambrecht & Quist issued a report forecasting 1996 revenues of $26 million and 1996 EPS of $.55. *Id.* ¶¶ 73–74. On June 19, 1996, Volpe Welty issued a report forecasting 1996 EPS of $.57 per share. On June 24, 1996, UBS Securities issued a report forecasting 1996 EPS of $.57.

scienter requirement as to securities underwriters." *Melder v. Morris,* 27 F.3d 1097, 1103 (5th Cir.1994); *see also In re Software Toolworks, Inc. Sec. Litig.,* 789 F.Supp. 1489, 1499 n. 16 (N.D.Cal.1992), *aff'd in pertinent part,* 50 F.3d 615 (9th Cir.1994) (an allegation that an underwriter committed fraud "in order to obtain professional fees is no a persuasive motive to establish scienter."). The suggested motive is also fundamentally questionable, as no rational underwriter would market an IPO to customers knowing that the stock would soon decline in value. *See, e.g., Melder,* 27 F.3d at 1103–04 and n. 10 (assertion that underwriters would "put their valuable professional reputation at risk" in order to profit from routine securities offerings "presents an inference of irrationality we refuse to indulge"); *Verifone,* 784 F.Supp. at 1481 (emphasizing that a securities analyst is not motivated to inflate projections of stock performance because "the analyst's reputation and livelihood depend solely on the analyst's ability to be correct").

### E. Liability of Defendants Who Are Not Alleged To Have Made Any Statement

Defendants claim that only defendants who actually made statements can be held liable because the Reform Act abolishes group pleading and because the holding in *Central Bank of Denver v. First Interstate Bank,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), eliminated "aiding and abetting" liability for § 10(b) claims. Because plaintiff has not met his burden of pleading false and misleading statements, the court does not determine at this time whether any individual defendant should be dismissed.

### F. Rule 20(a) Claims Against Individual Defendants

██ Rule 20(a) of the 1934 Act provides for controlling person liability:

Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). To establish control person liability, a plaintiff must show that a primary violation, e.g., a Section 10(b) violation, was committed and that the defendant "directly or indirectly" controlled the violator. Because plaintiff has not pled sufficient facts to show a primary violation, the claim under Rule 20(a) is dismissed.

### IV. CONCLUSION

This Complaint must be dismissed. Plaintiff has failed to format his Complaint in compliance with the standards set forth in Rules 8 and 9 and the Reform Act. He has failed to adequately allege the content of many alleged misstatements. He has failed to demonstrate why any alleged statement was false. He has failed to allege contemporaneous facts showing that any of the alleged statements were false when made. He has failed to allege any facts showing that any defendant acted with scienter, and with regard to the underwriters, has alleged a "scheme" based on little more than routine professional services.

The court grants plaintiff leave to amend. The amended complaint must comply with Rule 8 of the Federal Rules of Civil Procedure as well as the following directives:

(1) The complaint shall contain no more than thirty (30) pages;

(2) The complaint shall not contain alleged misstatements which are inactionable on their face, i.e., accurate statements of historic fact, vague and general statements of optimism, publicly known facts, or any vague impressionistic repackaging of defendants' actual oral statements (i.e., characterizing defendants as representing that a product or businesses doing "well" or was "succeeding" or was a "success," or that Lumisys or Imagraph was "successfully developing" a product); and

(3) The amended complaint shall set forth each allegedly false or misleading statement, and follow each statement with the specific reason or reasons why the statement was false when made.

Any amended complaint that does not comply with this order is subject to dismissal.

## V. ORDER

The defendants' motions to dismiss are granted with leave to amend no later than May 5, 1998, as set forth in the stipulation and order filed on March 9, 1998. Plaintiff's motion to strike is granted in part and denied in part.