**Rafael AGUILAR, Plaintiff–Appellant,**

v.

**INTERNATIONAL LONGSHOREMEN'S UNION LOCAL # 10; International Longshoremen's and Warehousemen's Union; Pacific Maritime Association, Defendants–Appellees.**

No. 90–15414.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 1991.

Memorandum Filed March 6, 1992.

Order and Opinion Filed June 5, 1992.

A. Thomas Hunt, Beverly Hills, Cal., for plaintiff-appellant.

Richard S. Zuckerman, Leonard, Carder, Nathan, Zuckerman, Ross, Chin, and Remar, and Craig Epperson, Lillick & Charles, San Francisco, Cal., for defendants-appellees.

Before: ALARCON, BOOCHEVER, and T.G. NELSON, Circuit Judges.

## ORDER

The memorandum disposition filed March 6, 1992, 956 F.2d 1166, is redesignated as an authored opinion by Judge Robert Boochever.

## OPINION

BOOCHEVER, Circuit Judge.

Fifty-eight part-time longshore workers at the Port of San Francisco appeal the entry of summary judgment against them in a suit against the union and the employers' association, in which the workers sought an injunction to require that registration for full-time permanent longshore work be solely on the basis of prior longshore experience. We affirm.

## BACKGROUND

The appellants in this case are fifty-eight "casual" longshore workers (the casual workers), each with over 1,000 hours of longshore work at San Francisco ports. As casuals, they perform longshore work on an overload basis when there is a shortage of available registered longshoremen. The appellees are the Pacific Maritime Association (PMA), a multi-employer association of vessel operators and stevedoring and marine terminal companies; the International Longshoremen's and Warehousemen's Union (ILWU), the union representing registered longshoremen employed by PMA members; and Local #10 of the ILWU, which represents San Francisco Bay Area longshoremen. Because this lawsuit challenges actions taken by these organizations as members of the Joint Port Labor Relations Committee, we refer to the appellees collectively as "the Committee."

Virtually all longshore work on the West Coast is performed under a collective bargaining agreement between PMA and the ILWU. An equal number of Local #10 and PMA members comprise the Joint Port Labor Relations Committee (JPLRC or Committee). Under the collective agreement, the Committee maintains a list of "registered" longshoremen available for dispatch on a rotational basis. When there is more work in the Bay Area than the registered longshoremen can staff, casuals are hired on a shift-by-shift basis. Casuals have no right to future longshore work; neither experience nor seniority is taken into account in assigning them overload work. The only requirement casuals must meet is proof of the legal right to work in the United States.

Before the 1989 registration at issue in this case, there had been no registration of full-time permanent longshoremen at San Francisco ports since 1969. Beginning in 1984, however, the Committee distributed and accepted applications from persons interested in registering as full-time permanent longshoremen in the event a registration became necessary. Instructions accompanied the applications, listing a number of criteria on which applicants would be evaluated, including previous job experience. Applicants were required to submit applications annually in order to remain active registration candidates. In 1989, the Committee announced it would conduct a registration and would use a lottery system to choose randomly those who would be registered. The Committee's purported purpose for such a selection system was to minimize the chance of litigation challenging the selection as discriminatory. On May 18, 1989, 200 names were randomly drawn from a total applicant pool of 1,419. Of the approximate 107 applicants with 1,000 or more hours of casual longshore experience, only eight were selected in the random draw.

The casual workers brought suit on a theory of promissory estoppel,[1] claiming that the application materials contained a definite promise that the registration would be conducted according to criteria that relied heavily on prior longshore experience. These criteria, they argued, would have given them a decisive advantage over persons without longshore experience. The casual workers claimed that they had reasonably, foreseeably, and detrimentally relied on this promise by continuing to work as casuals and not seeking other work. After denying the casual workers' motion for a preliminary injunction, the district court ultimately granted the Committee's motion for summary judgment. The casual workers now appeal.

## DISCUSSION

The district court found that the representations contained in the application materials were insufficient, as a matter of law, to support a promissory estoppel claim. We review its decision de novo. *See Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We must determine, viewing the evidence in the light most favorable to the casual workers, whether any genuine issue of material fact exists and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

■ To establish an enforceable contract on a promissory estoppel theory, the casual workers must meet five requirements.[2] They must show (1) the existence of a promise, (2) which the promisor reasonably

should have expected to induce the promisee's reliance, (3) which actually induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the promise. *See Hass v. Darigold Dairy Products, Inc.*, 751 F.2d 1096, 1100 (9th Cir.1985); Restatement (Second) of Contracts § 90 (1981). We need not address all of these elements because we find decisive in this case the lack of a definite promise, and the unreasonableness and unforeseeability of the casual workers' reliance on the representations contained in the application materials. The facts concerning the actual language of these representations are undisputed. Therefore, we focus on the substantive requirements of promissory estoppel to determine whether, as a matter of law, an enforceable contract was formed. *See, e.g., Trifiro v. New York Life Ins.*, 845 F.2d 30 (1st Cir.1988) (disposing of promissory estoppel claim on summary judgment where content of written and oral representations was undisputed).

### Existence of a Promise

■ We first determine whether the representations made here constitute the type of promise upon which a claim of promissory estoppel can be predicated. The casual workers claim to have relied specifically on the following language in application materials distributed to them by the Committee:

When the Joint Port Labor Relations Committee, subject to the approval of the Joint Coast Labor Relations Committee, determines that additions to the Class B registration list in the port are necessary, applicants who are deemed to be best qualified by the JPLRC on the basis

---

**1.** They also challenged the lottery on the ground that it was racially discriminatory, a claim that the district court rejected. The workers have not appealed this claim and we do not address it here.

**2.** The Committee and the casual workers disagree whether federal or state law applies to the promissory estoppel claim. This claim involves representations made in an employment application distributed pursuant to the collective bargaining agreement (CBA). The Committee contends that the application is part of the CBA and that construing the representations involves in-

terpretation of the CBA. It therefore reasons that section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, requires that we apply federal common law. The casual workers, on the other hand, characterize their claim as a pendent state claim to which California law applies. We need not resolve this issue because federal and California law on promissory estoppel are substantially identical. Moreover, if we analyze a section 301 claim under federal law, we look to state law for guidance. *See Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821 (9th Cir.1985).

of their application scores shall be notified to appear for interviews. Failure to appear as scheduled for an interview without a valid excuse or refusal to be interviewed shall result in disqualification.

\* \* \* \* \* \*

Those applicants deemed to be best qualified for registration as longshoremen or clerks will be registered *subject to limitations imposed by the JPLRC.*

\* \* \* \* \* \*

The following criteria will be reviewed by the JPLRC in determining which individuals are the most qualified for registration. Your answers to application questions will determine your qualifications as to the criteria. The criteria are:

—Availability to work any shift and at any location to which you are dispatched.

—Adequate means of transportation necessary to report to dispatch hall and be able to travel to job location.

—Being available for work on a full-time basis with no interference from other business or personal obligations.

—Willingness and ability to perform all work required of you.

—*Any training, education, and/or job experience you possess that will benefit the industry.*

Exhibit E, Appellants' Appendix (emphasis added). The casual workers argue that this language constituted a promise that if registration occurred, the best qualified applicants would be registered, and that the only meaningful criterion would be longshore experience. Thus, they reason that the application held out assurances that experience would be the decisive factor in being registered.

We agree that these are possible inferences that might be drawn from the representations in the application materials. The fact that inferences might be drawn from these representations, however, does not transform them into an enforceable promise. To be enforceable under a theory of promissory estoppel, the promise must be "clear and unambiguous." *Laks v. Coast Fed. Sav. & Loan Ass'n,* 60 Cal.

App.3d 885, 890, 131 Cal.Rptr. 836 (1976); *see* 1 Witkin, *Summary of California Law* § 249 (1987) (citing *Southern Calif. Acoustics Co. v. C.V. Halder, Inc.,* 71 Cal.2d 719, 723, 456 P.2d 975, 79 Cal.Rptr. 319 (1969)). On the other hand, a promise that is "vague, general or of indeterminate application" is not enforceable. *See Hass v. Darigold Dairy Prods. Co.,* 751 F.2d at 1100.

The representation in the application instructions that job experience would be considered did not constitute a clear and definite promise that previous longshore experience would be the determinative factor in choosing who would be registered. In fact, longshore experience is not specifically mentioned. The application states that applicants' previous job experience was a criterion that would "be reviewed" by the Committee in determining who was best qualified. Yet it also lists a number of other criteria and does not indicate the relative weight to be given any of the criteria. We do not find in these listed criteria a clear promise that longshore experience will be a determinative or even substantial factor.

Instructive on this point is the scoring system the Committee members had previously adopted in collective bargaining, which they later agreed to replace with a lottery system for the 1989 registration. *See* Memorandum of Coastwise Rules Covering Registration and Deregistration of Longshoremen and Clerks, Attachment G–1. Under this system, longshore experience is worth a maximum of 10 out of 100 points. Equal weight is given to living within 25 miles of port, to continuity of employment, and to reliability of employment. More weight, however, is given to having a high school diploma (15 points maximum), to completion of trade courses (20 points maximum), and to other employment experience (15 points maximum). Thus, the effect on the casual workers' chances of being registered of the representation that job experience would be considered was unclear: longshore experience might make no difference whatsoever to being found qualified for registration. We therefore find no clear promise that regis-

tration would be on the basis of longshore experience.

Moreover, the instructions state "applicants deemed to be best qualified for registration as longshoremen ... will be registered subject to limitations imposed by the JPLRC." This reservation by the Committee of the power to impose limitations on the registration process was a substantial caveat, one which we read as throwing into question how any "promise" made would be applied in a registration. In this case, of course, the Committee exercised this reserved power to carry out the registration by lottery. Combined with the lack of specific reference to longshore experience, this additional cautionary language points to a conclusion that any promise found in the application materials was of "indeterminate application."

In sum, because the promise was not sufficiently definite and was of indeterminate application, we conclude it was not the type of promise enforceable on a theory of promissory estoppel.

*Reasonable and Foreseeable Reliance*

We next determine whether the casual workers' reliance on the representations was reasonable and foreseeable. We note as a preliminary matter that the district court properly excluded from consideration a declaration submitted by the casual workers as evidence of reasonable and foreseeable reliance. James Kirkpatrick, an avowed expert in employment application interpretation, asserted in a declaration filed in opposition to the Committee's summary judgment motion, that in his opinion "almost anyone reading these [application] instructions ... would conclude that a definite promise had been made," that the reliance of the casual workers in "enter[ing] or stay[ing] in part-time longshore work ... is reasonable," and that the Committee should have foreseen this reliance. Appellants' Appendix, Exhibit H.

■ Expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue...." Fed.R.Evid. 702. Here,

the reasonableness and foreseeability of the casual workers' reliance were matters of law for the court's determination. As such, they were inappropriate subjects for expert testimony. *See Marx v. Diners Club, Inc.*, 550 F.2d 505, 509 (2d Cir.1977) (expert testimony consisting of legal conclusions regarding existence of contract or meaning of its terms not admissible), *cert. denied*, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977). The district court did not abuse its discretion when it determined that this expert testimony would be "utterly unhelpful" and was therefore inadmissible. *See Little Oil Co. v. Atlantic Richfield Co.*, 852 F.2d 441, 446 (9th Cir.1988) (exclusion of expert testimony reviewed for manifest error).

As we have discussed, the purported promise to register according to longshore experience was not specific and clear. This leads us to conclude that any reliance on it by the casual workers was unreasonable and unforeseeable. *See Santoni v. Federal Deposit Ins. Corp.*, 677 F.2d 174, 179 (1st Cir.1982) (definiteness and certainty are required "so that the promisor should reasonably foresee reliance by the promisee"). We also base this conclusion on the casual workers' express acknowledgment that the particulars of the registration process were subject to agreement between Committee members and on the uncertainty that registration would in fact occur.

First, the casual workers' reliance on the application materials was unreasonable in light of the application's statement that the registration process was subject to Committee control. Basic contract principles indicate that reliance on a promise made with the reservation of the option to change that promise is unreasonable. *Cf.* Restatement (Second) of Contracts § 2 comment e ("[T]he reservation of an option to change [a present] intention means that ... no promisee ... is justified in an expectation of performance."). Here, the statement in the application reserved to the Committee the option to impose limitations on the registration process, which reasonably could be read to include the option to alter the method by which registrants are

chosen. As such, the casual workers were unjustified in relying on a representation that a specific method would be used.

Second, the casual workers themselves expressly acknowledged that the process described in the application was subject to modification by Committee members. The registration applications asked applicants to indicate by marking a box that they understood the application would be considered according to the "rules and procedures the ILWU and PMA agree to use." By filling out this portion of the application the casual workers expressly acknowledged in writing that the described registration, should it occur, was subject to future agreements negotiated between the Longshoremen's Union and the Pacific Maritime Association. In the end, of course, these Committee members agreed in collective bargaining on a lottery procedure for considering applications. The casual workers' reliance on a specific method of selection was thus contrary to their own acknowledged understanding that selection procedures were subject to change. Such reliance, we believe, "must be deemed unreasonable as a matter of law." *Trifiro v. New York Life Ins. Co.*, 845 F.2d at 33 (finding reliance unreasonable when plaintiff acknowledged in writing that defendant's acceptance of offer was subject to committee approval, even though defendant orally had told him that approval was a "mere formality"). Moreover, this reliance could not have been foreseen by Committee members, who had yet to negotiate and agree on specific selection procedures.

Third, the conditional nature of the purported promise, that if registration occurred it would be on the basis of experience, casts additional doubt on the reasonableness and foreseeability of the casual workers' reliance. Registration had not been held for nearly twenty years, and there was uncertainty about if and when it would be held. Under these circumstances, foregoing other employment on the basis of an ephemeral hope that registration would occur was not, as a matter of law, either reasonable or foreseeable.

## CONCLUSION

The Committee's representations about how applicants would be selected for longshore registration were not sufficiently clear and definite to constitute an enforceable promise that prior longshore experience would be a decisive factor in selection. Nor, reading the application materials as a whole, was the casual workers' reliance on these representations reasonable or foreseeable. Therefore, the casual workers have not met the requirements of promissory estoppel, and we cannot give legal effect to their hopes and understandings concerning their chances for future registration as longshoremen. We therefore AFFIRM the judgment of the district court.