**GLEN HOLLY ENTERTAINMENT, INC., a California corporation dba Digital Images Plaintiff,**

v.

**TEKTRONIX, INC., an Oregon corporation, and Avid Technology, Inc. a Delaware corporation, Defendants.**

No. CV 99–02476SVWRCX.

United States District Court, C.D. California.

Sept. 15, 1999.

Jeffrey T. Makoff, Charlotte N. Makoff, Makoff Kinnear Law Offices, San Francisco, CA, for plaintiff.

Howard A. Kroll, Preston Gates & Ellis, Los Angeles, CA, Stanley M. Gorinson, John L. Longstreth, Jeffrey A. Marks, Preston Gates Willis & Rouvelas Meeds, Washington, DC, for Tektronix, Inc., defendant.

Gregory N. Pimstone, Stephen J. Newman, Lathan & Watkins, Los Angeles, CA, Peter A. Spaeth, James C. Burling, Ethan J. Brown, Hale & Dorr, Boston, MA, for Avid Technology, Inc., defendant.

## ORDER DISMISSING WITHOUT PREJUDICE PLAINTIFFS' FIFTH, SIXTH, AND SEVENTH CLAIMS IN PLAINTIFF'S FIRST AMENDED COMPLAINT

WILSON, District Judge.

### I. INTRODUCTION

Among other allegations in the present suit, Plaintiff Glen Holly Entertainment, Inc. ("Digital Images") alleges that Defendant Tektronix, Inc ("Tektronix") mislead Digital Images about the future of a key product. Tektronix brings the present motion to dismiss Plaintiff's claims for fraud and negligent misrepresentation. Tektronix argues that the claims fail to allege any actionable misstatements and, to the extent that they do allege actionable misstatements, that the claims do not meet the requirements of Fed.R.Civ.P. 9(b).

Tektronix also moves to dismiss the Plaintiff's claim for Promissory Estoppel on the grounds that Plaintiff has failed to allege specific, enforceable promises or the

precise nature of Digital Images' reliance and resulting injury.

The Court has reviewed the allegations in the complaint, and concludes that very few actually constitute statements upon which a listener could have relied. For those few statements, the Court concludes that that Plaintiff has failed to adequately plead reliance. The Court therefore DISMISSES WITHOUT PREJUDICE Plaintiff's Fifth, Sixth, and Seventh claims.

## II. BACKGROUND

On a motion to dismiss, the Court evaluates only the legal sufficiency of a complaint and not the weight of the evidence supporting it. Furthermore, a court must accept as true all factual allegations in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Under that standard, the relevant allegations of Digital Images' First Amended Complaint are as follows:

*Business of Digital Images:* Non-linear digital video editing is a label that describes the process of using a computer to edit video and audio segments. Unlike traditional film editing, which required cutting and pasting bits of film together, non-linear digital editing allows video editors to easily arrange and re-arrange video and audio sequences. "Lightworks" is a line of digital imaging products in the same way that Apple Computer's Macintosh is a line of computer products.

In 1995, Digital Images began using Lightworks products as the core of its non-linear digital video editing business. Digital Images describes itself as a Lightworks "vendor," by which it means that its principal business consisted of renting digital imaging equipment to smaller film produc-

ers who did not have their own equipment.[1] In addition to the principal business of renting equipment for others to edit video works, Digital Images also did some business in editing video works themselves.

*Statements From Tektronix About Lightworks*

At the times at issue in this Complaint, Tektronix was the manufacturer of the Lightworks line.

Starting in 1996 through 1998 Tektronix executives made representations and promises to Digital Images that Tektronix was making specific hardware, software and peripheral upgrades to the Lightworks products that would enable Lightworks to better compete with its only competitor Avid Technology, Inc. ("Avid"). According to the Complaint, these representations and promises were made to Digital Images through oral and written statements during: (1) Lightworks Owners' Group Meetings, (2) One–to–One Conversations, (3) Periodic Direct Communications, (4) Industry Conventions, and through (5) Public Statements.

A. *Alleged Representations and Promises Made By Tektronix To Digital Images:*

1) Statements Made At The Lightworks Owners' Group Meetings

Digital Images alleges that from 1996 through 1998, named and unnamed Tektronix executives met with Digital Images and other Lightworks vendors in meetings of the Lightworks Owners' Group held in Los Angeles. During these meetings Digital Images alleges that Tektronix made certain representations and promises with regards to Lightworks products.

---

1. As noted above, the fraud, negligent misrepresentation, and promissory estoppel claims are only part of the present Complaint. The remainder of the Complaint focuses on Plaintiff's antitrust allegations, which are analyzed in a separate Order. The Court here notes that, in its discussion of Plaintiff's antitrust allegations, it has used the term "lessor" rather than "vendor" because the former term is more descriptive of Plaintiff's market position.

Included were representations that Tektronix had instructed its employees and committed its full corporate resources to complete high priority new product development and high priority existing product enhancements of the Lightworks products. These high priority developments and enhancements would be pursued full tilt until such products could be placed on the market to compete with Avid. Tektronix also represented that Tektronix had already developed technology superior to Avid's. Moreover, Tektronix represented that it would implement an aggressive program to create more market visibility for the existing Lightworks film editing line and would vastly increase the corporate resources allocated to advertising and promoting the Lightworks product line.

More specific representations included representations that Tektronix would complete and deliver new software for the Lightworks and Heavyworks film editing products (known as "Version 6.0"). The new software would include: (1) tilting capabilities, (2) improved effects, (3) cut-lists, and other editing features. The new hardware would include: (1) a Heavyworks Series 3 system that would deliver real-time effects, and (2) the Lightworks V.I.P. editing system that would offer both "on-line" and "offline" editing solutions with both 24 and 30–frame software. Furthermore, the completion of peripheral hardware would enhance Lightworks film editing, including among other important products (1) a "digistation", and (2) a fadar console.

2) Statements Made During One–To–One Conversations Between Digital Images and Tektronix

a) *Between Digital Images' President And Named Tektronix Sales Representatives And Executives (Compl. ¶ 16)*

From 1996 through August 1998, Digital Images' President had numerous one-to-one conversations with named Tektronix sales representatives and executives. Digital Images alleges that Tektronix repeated and reaffirmed the same representations and promises made by unnamed high level executives at the Lightworks Owners' Group meetings.

b) *Between Digital Images' President And Tektronix Andrew Schneider (Compl. ¶ 20)*

Furthermore, Digital Images' President had a conversation with Tektronix sales representative Andrew Schneider on or about March 2, 1998 at a Tektronix sales meeting. During this conversation Andrew Schneider told Plaintiff's President that Tektronix was in a position to deliver 24–frame software for the V.I.P. system no later than September 1, 1998. Plaintiff's President advised Schneider that this information would be provided to Plaintiff's customers and therefore it had to be correct. Andrew Schneider stated that he had gotten the word directly from unnamed Tektronix executives. These unnamed Tektronix executives were present at the sales meeting with Andrew Schneider.

3) Statements Made During Periodic Direct Communications Between Digital Images' President and Tektronix (Compl. ¶ 17)

From 1996 through August 1998, Plaintiff's President had periodic direct communications with named Tektronix research and development executives or sales and marketing executives located at Lightworks in London. During these conversations Tektronix again repeated and reaffirmed to Digital Images all of the representations and promises made at the Lightworks Owners' Group meetings.

4) Statements Made During Industry Conventions (Compl. ¶ 18)

From 1996 through August 1998 Tektronix participated in a variety of industry conventions, including the annual National Association of Broadcasters Convention in

Las Vegas ("NAB"), and typically the annual ShowBiz Expo in Los Angeles. During these conventions, unnamed high level Tektronix executives were available and continued to repeat and reaffirm to Digital Images the same representations and promises made at the Lightworks Owners' Group meetings.

5) Public Statements (Compl.¶ 26)

Digital Images alleges that Tektronix through public statements made promises and representations which publicly assured its customers (including Digital Images) that the Lightworks system was a leading system. Moreover, Tektronix represented that, through enhancements and upgrades that were nearly complete, Tektronix would seize substantial market share back from Avid.

For example in September 1997, Tektronix announced in a press release that imminent upgrades to the Lightworks system would "provide a price/performance package which is unmatched in the industry today." Then in February 1998, Tektronix stated in a press release that "[e]ven with strong competition, Lightworks systems are still favored by many of Hollywood's top editors." Next in March 1998, Tektronix stated in a press release that "Tektronix is committed to the Lightworks editing line, illustrated by new software releases. The upcoming release of Version 6.0 software brings dramatic new features to Lightworks Turbo and Heavyworks systems, including 5 min/GB picture resolution for the Heavyworks product...". Furthermore in June 1998, Tektronix stated in a press release that "the number of films edited on the Heavyworks system are a testament to the fact that Lightworks systems are favored by many of today's top editors."

Also in March or April 1998, a named Tektronix executive represented in a letter which was later republished in an industry newsletter that (1) Tektronix was "committed" to the Lightworks community, (2) "the further development of the Light-

works interface for both broadcast and film editing is our immediate goal," (3) Tektronix sees the Lightworks product as a unique and distinctly superior interface, (4) it was Tektronix intent "to make every aspect of the product superior" and (5) Tektronix was actively pursuing the creation of the "next generation of Lightworks."

Moreover in August 1998, Digital Images alleges without identifying the source that Tektronix made a public representation to the effect that Tektronix was developing a plan to introduce a new series of Lightworks products and upgrades to compete aggressively with Avid—from which Tektronix believed it could wrest significant market share in nonlinear film editing systems.

B. *Allegations That Tektronix Knew the Representations Were False When Made And Had No Intention To Perform the Promises* (Compl.¶ 21)

Digital Images alleges that the representations by Tektronix were false when made, and Tektronix knew it. Furthermore, Tektronix made the promises with no intention of performing. To support these allegations of falsity Digital Images asserts (1) observations about Tektronix Lightworks product development and enhancement, and (2) direct communications between Digital Images and Tektronix employees.

1) Observations About Tektronix Lightworks Product Development and Enhancement (Compl.¶ 21(a-c))

Plaintiff asserts observations to support the allegation that the representations and promises were false when made by Tektronix. For example, Plaintiff alleges that the purported hardware upgrades were abandoned after a Heavyworks series 3 prototype was made. Similarly, the 24–frame software never was developed to the point that it could be installed onto the

V.I.P. system and therefore never made usable to the film industry. Moreover, the hardware peripherals were not developed such as the digistation, which never made it past the prototype stage. Also, Plaintiff alleges that the fadar console was not fully-interfaced with the software and therefore tracks created on the console could not be re-edited.

Finally, Plaintiff alleges that Tektronix barely advertised the Lightworks products.

### 2) Direct Communications Between Digital Images and Named Tektronix Employees (Compl.¶ 21(d-g))

In April 1998, Digital Images was advised by David Abel (Tektronix' Head of Software Development) that Tektronix did not intend to create 24–frame software for the V.I.P. editing system. Next, in or around July 1998, Digital Images President was advised by Ben Rappoport (a technical support specialist in the Tektronix North Hollywood office) that "not a single person" in Tektronix London office was assigned to the Version 6.0 upgrade to monitor problems with the software and to repair them. Similarly, in July 1998 Linda Goldberg (Customer Support Manager in the Tektronix North Hollywood Office) confirmed to Plaintiff's President that nobody at Tektronix was assigned to work on Version 6.0.

Furthermore, after the September 3, 1998 announcement of the "strategic alliance" between Tektronix and Avid (that resulted in the discontinuation of the Lightworks system product line) Plaintiff's President had numerous conversations with former named Tektronix employees. These individuals definitively stated to Plaintiff's President that Tektronix never allocated the necessary resources to achieve the hardware and software commitments it had made, and that they were completely aware of that fact when the commitments were made. Moreover, Plaintiff's President was advised that Version 6.0 was never finished because "Tek-

tronix never had any intention of adding 24–frame software to the V.I.P. system." Additionally, another unnamed former Tektronix employee advised Plaintiff's President that Tektronix had "one person working one-half a day, once a month on Version 6—if that much."

### C. *Digital Images' Reliance On The Alleged Representations And Promises Made By Tektronix* (Compl.¶¶ 21–22)

Digital Images alleges that these representations and promises by Tektronix were highly material to Digital Images as a vendor of Lightworks products. For example, Digital Images alleges that was critical for Digital Images to accurately inform its clients of the precise status of an editing system during a client's projected editing schedule. Moreover, Digital Images decided without any verbal or written contract, to remain an exclusive Lightworks system vendor because of the promises and representations made by Tektronix. As a result, Digital Images expended funds in anticipation of continuing to act as the vendor of Lightworks products.

### D. *Digital Images' Resulting Damages*

In September, 1998, Tektronix discontinued the Lightworks line. Digital Images alleges that, because it had relied on statements by Tektronix, its business was premised upon the continuing existence and development of new Lightworks products. Digital Images alleges that the discontinuation therefore resulted in significant losses, including (1) loss of clients and goodwill, and (2) loss of the value of the funds expended on previous purchases of Lightworks equipment that was now obsolete. As a result of these losses Digital Images asserts it is entitled to recover the reasonable value of all amounts expended by it in reliance on Tektronix statements and promises with respect to the Lightworks system.

## III. APPLICABLE LEGAL STANDARDS

### A. Standard for Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a mechanism for a party to dismiss a claim if the claimant fails to state a claim upon which relief can be granted. However, a motion under Rule 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Thus, in evaluating a complaint, only its legal sufficiency, and not the weight of the evidence supporting it, may be considered. Furthermore, a court must accept as true all factual allegations in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

### B. Elements of Fraud

■ The elements of fraud and deceit are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. 5 Witkin, *Summary of Cal. Law* (9th ed. 1988) Torts, § 676, pp. 778–79.

#### 1) Actionable Assertions Of Fraud:

■ The alleged misrepresentation must ordinarily be an affirmation of past or existing facts to be an actionable fraud claim; predictions as to future events are deemed opinions, and not actionable by fraud. 5 Witkin, *Summary of Cal. Law* (9th ed. 1988) Torts, § 676–678, pp. 778–80; *San Francisco Design Center Assoc. v. Portman Companies,* 41 Cal.App.4th 29, 50 Cal.Rptr.2d 716, 724 (1995). The alleged misrepresentation must also ordinarily be a specific factual assertion; generalized statements are usually not actionable as fraud. *In re All Terrain Vehicle Litigation,* 771 F.Supp. 1057, 1060

(C.D.Cal.1991), *modified on other grounds in,* 978 F.2d 1265 (9th Cir.1992), 979 F.2d 755 (9th Cir.1992). However, statements about specific or absolute characteristics of a product are considered specific statements and may be actionable statements of fraud. *Id.* at 1060.

#### 2) Non–Actionable Assertions Of Mere "Puffery"

■ In contrast, assertions that a particular product is the "best" or speculative statements about possible profits are non-actionable opinions ("puffing") and a party is not entitled to rely upon them. 5 Witkin, *Summary of Cal. Law* (9th ed. 1988) Torts, § 676–677, pp. 779–80. "Puffery" has been described as "making generalized or exaggerated statements such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely". *In re All Terrain Vehicle Litigation,* 771 F.Supp. at 1060 (including examples of deceptive language of marketing literature is mere "puffery" and fails to state a claim for fraud); *Wenger v. Lumisys, Inc.,* 2 F.Supp.2d 1231, 1247 (N.D.Cal.1998) (holding vague statements of opinion are not actionable because they are considered immaterial and discounted by the market as mere "puffing").

### C. Pleading Standard For Fraud Under Rule 9(b)

Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b). 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 582 (1990) ("A pleading that simply avers the technical elements of fraud does not have sufficient informational content to satisfy Rule 9(b)'s requirements."). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Although Rule 9(b) provides no explicit standard for determining the amount of

detail that must be pleaded, the Ninth Circuit has clarified the requirements of Rule 9(b). *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

■ When pleading fraud, a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *GlenFed*, 42 F.3d at 1548 n. 7, quoting J.W. Moore et al., *Moore's Federal Practice* § 9.03, at 9–19–21 (2d. ed.1994).

### 1) Pleading With Specificity As To The Circumstances Surrounding The Fraud: When, Where, Identity, And Content

The particularity requirement is designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir.1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672. For example, allegations such as "[d]uring the course of discussions in 1986 and 1987," and "in or about May through December 1987" do not make the grade under Rule 9(b). *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp. 1053, 1057 (N.D.Cal.1991).

Furthermore, a pleader must identify the individual who made the alleged representation and the content of the alleged representation. *GlenFed*, 42 F.3d at 1548; *accord DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990) ("Although states of mind may be pleaded generally, the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how...").

### 2) Alleging Falsity

The Ninth Circuit requires, "[t]o allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *GlenFed*, 42 F.3d at 1548; *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988) (holding that 9(b) requires specific descriptions of the representations made, [and] the reasons for their falsity). Furthermore, the most direct way for a plaintiff to demonstrate the falseness of the charged statements is to plead "inconsistent contemporaneous statements or information which were made by or available to the defendants." *GlenFed*, 42 F.3d at 1549. However, it should be noted that this does not require a plaintiff to "allege with particularity facts giving rise to an inference of scienter." *Id.* at 1550. Nor is the evidence used to demonstrate the falseness of the charged statements tested at the pleading stage. *Id.*

■ In contrast, a plaintiff does not satisfy the falsity requirement by merely asserting that a company's later revelation of bad news means that "earlier, cheerier" statements must have been false. *GlenFed*, 42 F.3d at 1548. In fact, these types of allegations are called "fraud by hindsight" and they do not establish falsity. *In re VeriFone Securities Litigation*, 784 F.Supp. 1471, 1486 (N.D.Cal.1992), aff'd, 11 F.3d 865 (9th Cir.1993) (plaintiff does not allege fraud simply by alleging that corporation was aware of more negative projections than it supplied the public and the future fell short of the corporation's more optimistic statements).

### 3) Benefits Received By Defendant As A Result Of The Alleged Representations

■ Tektronix asserts that benefits received by the defendant as a result of the alleged statements must be specified as part of pleading fraud under Rule 9(b).

The Ninth Circuit in *GlenFed* does not specifically state that the benefits received by the defendant as a result of the alleged misrepresentation need to be specified. *GlenFed,* 42 F.3d at 1547–48. However, there is no indication that the Ninth Circuit intended to change the requirements set forth previously to plead fraud under Rule 9(b). *Neubronner,* 6 F.3d at 671 ("The complaint must specify such facts as the times, dates, places, *benefits received,* and other details of the alleged fraudulent activity") (emphasis added). In fact, the Ninth Circuit in *GlenFed* affirms their previous holdings with regards to pleading fraud under Rule 9(b) and presents the *GlenFed* holding as being consistent with circuit precedent. *GlenFed,* 42 F.3d at 1547–48. Therefore, plaintiffs must also specify the benefits received by the defendant as a result of the alleged misrepresentations.

4) Exception to Rule 9(b)

■ Rule 9(b) may be relaxed as to matters peculiarly within the opposing party's knowledge. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297, at 416 & n. 96 (1990). In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts upon which the belief is founded. *Id.* The Ninth Circuit has allowed Rule 9(b) to be relaxed with respect to matters within the sole possession and control of the opposing party. *Neubronner,* 6 F.3d at 671 (upholding dismissal of fraud claims for failure to meet Rule 9(b) but holding that "some limited discovery might be permitted" in an insider trading case).

The Court notes, however, this exception does not nullify Rule 9(b). "Mere conclusory allegations of fraud are insufficient. Statements of time, place, and nature of the fraudulent activities are required, so that defend can prepare an adequate answer to the allegations." *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987).

### D. Discovery

The Ninth Circuit has stated that one purpose of Rule 9(b)'s requirement that plaintiffs plead fraud with particularity is to "prevent the filing of a complaint as a pretext for the discovery of unknown wrongs." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). However, the Ninth Circuit also recognizes "that some balance must be achieved between the need to protect defendants from having to defend factually baseless litigation and the need to afford plaintiffs an adequate opportunity to develop factual bases for legitimate claims". *Neubronner,* 6 F.3d at 666.

### E. Promissory Estoppel

1. Elements of Promissory Estoppel

■ To establish a claim for promissory estoppel the Plaintiff must plead: (1) the existence of a promise, (2) that the promisor reasonably should have expected to induce the promisee's reliance, (3) that the promisee actually induce[d] such reliance, (4) that such reliance is reasonable, and (5) that injustice can be avoided only by enforcement of the promise. *Aguilar v. International Longshoremen's Union Local # 10,* 966 F.2d 443, 444 (9th Cir.1991).

■ Furthermore, to be enforceable under a theory of promissory estoppel, the promise must be clear and unambiguous. *Id.* at 445. Moreover, "to be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages". *Ladas v. California State Automobile Ass'n,* 19 Cal.App.4th 761, 770, 23 Cal. Rptr.2d 810 (1993).

In contrast, a promise that is "vague, general or of indeterminate application" is not enforceable. *Aguilar,* 966 F.2d at 445. Although inferences can be made from representations, these inferences are not then transformed into an enforceable promise. *Id.*

## VI. APPLICATION OF LAW TO THE INSTANT CASE

### A. *Plaintiff's Claim Five for Fraud and Deceit and Claim Six for Negligent Misrepresentation*

Plaintiff's Fifth Claim for fraud and deceit alleges that Tektronix made misrepresentations to Digital Images as to its commitment to provide and advertise various new Lightwork products and upgrades. Plaintiff's Sixth Claim relies on exactly the same allegations to assert a claim for negligent misrepresentation. As a result, both claims will be analyzed together.

### 1) Would Any of the Alleged Representations Constitute Actionable Assertions Of Fraud?

#### i) *Non-actionable Assertions of Fraud:*

#### a) Statements Made By Tektronix During The Lightworks Owners' Group Meetings

■ The Complaint makes certain allegations of representations made at the Lightworks Owners' Group meetings that appear to be too general to be the basis of a fraud claim. These statements are generalized statements of "puffery" that no reasonable consumer would interpret a factual claim upon which he or she could rely. *In re All Terrain Vehicle Litigation,* 771 F.Supp. at 1060. For example, representations made by Tektronix that "high priority" development of a number of different products "would be pursued full tilt,"[2] and that Tektronix had developed technology "superior to Avid's" are all non-actionable examples of puffery. Likewise, claims that Tektronix had "implemented an aggressive program" that included "vastly increasing" corporate resources to promote the Lightworks system are also puffery. As a result, the alleged misrepresentations do not amount to actionable assertions of fraud.

Furthermore, the Complaint asserts the same non-actionable statements made at the Lightworks Owners' Group meetings to support the allegations of misrepresentations made during the one-to-one conversations between Digital Images' President and named Tektronix' sales representatives and executives, periodic direct communications, and industry conventions. As a result, none of the alleged misrepresentations made during: (1) Lightworks Owners' Group meetings, (2) one-to-one conversations between Digital Images President and named Tektronix sales representatives and executives, (3) periodic direct communications, and (4) industry conventions, arise to actionable assertions of fraud.

#### b) Public Statements

■ As Tektronix correctly points out most of the alleged misrepresentations made through the Public Statements contained in the Complaint are general statements of optimism which amount to non-actionable "puffery". For example statements in Tektronix press releases such as, (1) "provide a price/performance package which is unmatched in the industry today," (2) "Tektronix is committed to the Lightworks editing line," (3) "[e]ven with the strong competition, Lightworks systems are still favored by many of Hollywood's top editors," (4) Tektronix was "committed to the Lightworks community," "development is our immediate goal," "superior interface," and Tektronix's intent "to make

---

**2.** Had Plaintiff alleged only that Tektronix falsely claimed to be working on various developments, such claims might be actionable and would not constitute puffery. However, any fraud claim arising out of such an allegedly false statement would still have to be analyzed as discussed herein.

In other words, should Plaintiff's next amended complaint plead that Tektronix was falsely claiming to be working on specific product developments, Plaintiff must meet the obligations of Rule 9(b) by specifying the Tektronix employees who made these claims *and* by specifying to the extent possible the evidence that such claims were false when made.

In addition, for each alleged false claim of product feature under development, Plaintiff must specify the nature of Plaintiff's reliance on such claim.

every aspect of the product superior," and (5) "number of films edited on the Heavyworks system area testament ... that Lightworks system is favored ... by today's top editors".

Indeed, these press release statements are comparable to the examples of nonactionable general statements of "puffery" discussed in *Wenger. Wenger*, 2 F.Supp.2d at 1247 ("The acquisition of XRS and Imagraph have allowed Lumisys to extend our high quality product offerings to better serve our customer's needs. We look forward to continually improving our performance," "We're the leader in a rapidly growing market," "Lumisys expected this strong demand to continue for years."). Therefore the alleged misrepresentations contained in the Tektronix press releases (Compl. ¶ 26 (a, b, d, e) do not amount to actionable assertions fraud.)[3]

### ii) *Actionable Assertions of Fraud:*

a) Statements Made By Tektronix During One–To–One Conversation Between Digital Images' President And Tektronix Sales Representative Andrew Schneider

The alleged misrepresentation made by Tektronix' Andrew Schneider to Digital Images' President that "Tektronix was in a position to deliver 24–frame software for the V.I.P. editing system no later than September 1, 1998" appears to be more than a general statement of optimism as to the future.[4] Therefore, for purposes of further analysis this statement is an actionable assertion of fraud.

### b) Public Statements

The alleged misrepresentation made through the March 1998 press release ap-

pears to rise to the level of a specific actionable assertion of existing fact rather than a general assertion of opinion. For example, the press release states "[t]he upcoming release of Version 6.0 ... brings ... new features to Lightworks Turbo and Heavyworks systems, including 5 min/GB picture resolution for the Heavyworks product...". It is conceivable that Tektronix already had the software developed in March 1998 when the press release was made. As a result, the statement made through the March 1998 press release is an actionable assertion of fraud.

Therefore, the only actionable assertions of fraud are: 1) the March 2, 1998 conversation between Digital Images' President and Tektronix' Andrew Schneider in which Tektronix announced it was in a position to deliver 24 frame capacity, and 2) the March 1998 Tektronix press release statement in which Tektronix indicated that Version 6.0 would include 5 min/GB capacity.

2. Do The Actionable Assertions Of Fraud Alleged In Plaintiff's Claim Five For Fraud And Deceit And Claim Six For Negligent Misrepresentation Satisfy The Pleading Requirements Of Rule 9(b)?

Tektronix properly relies on the standard set-forth by the Ninth Circuit in *GlenFed* to assert that Plaintiff's allegations of fraud fail to state with specificity the circumstances surrounding the alleged fraud. *GlenFed*, 42 F.3d at 1548 ("The complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the

---

3. The Complaint also alleges a public representation made by Tektronix in August 1998. (Compl.¶ 26(f)). However, the Complaint does not provide further information about the alleged misrepresentation. As a result, this representation is not an actionable assertion of fraud.

4. This Court recognizes the counter-arguments available such as (1) the word "position" is too vague to be actionable, (2) Andrew Schneider as a sales representative might not be a reliable source for the information, and (3) the statement is about a future event.

**1098**

statements were made, and identify those responsible for the statements").

### i) Rule 9(b) Pleading Fraud With Specificity As To: When, Where, Identity, And Content Of Alleged Representation

#### a) One–to–One Conversation Between Digital Images President And Tektronix Sales Representative Andrew Schneider

The Complaint does allege with the required specificity of Rule 9(b) "when" and "where" the conversation takes place. For example, "on or about March 2, 1998 at a Tektronix sales meeting". Therefore, the requirement of specifically stating "when" and "where" an alleged misrepresentation takes place is met. The Complaint also specifically alleges the identity of the speakers and content of the representation.

#### b) Public Statements

The only public statement that is an actionable assertion of fraud is contained in the March 1998 press release. The Complaint alleges with specificity "when" and "where" the representation takes place, identifying the March 2, 1998 Tektronix Press Release entitled "Oscar–Nominated Editors Use Tektronix Lightworks Systems as a Tool of Choice". Furthermore, the Complaint specifically alleges the identity and content of the press release. As a result, the Complaint properly asserts with specificity the identity and content as required under Rule 9(b).

### ii) Alleging Falsity

The Complaint alleges that Defendant Tektronix "knew" the statements were false when made and had "no intention to perform" the promises. The Ninth Circuit requires, "[t]o allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a state-

ment, and why it is false." *GlenFed,* 42 F.3d at 1548. The Ninth Circuit suggests the most direct way for a plaintiff to demonstrate the falseness of the charged statements is to plead "inconsistent contemporaneous statements or information which were made by or available to the defendants." *Id.* at 1549.

#### 1) Observations About Tektronix Lightworks Product Development and Enhancement

█ The Complaint sets forth "observation" type statements to support the allegation that the representations were false when made by Tektronix. For example, the Complaint asserts that because the "hardware upgrades were abandoned after a Heavyworks series 3 prototype was made", "24–frame software never was developed to the point that it could be installed onto the V.I.P. system", "hardware peripherals were not developed", "the digistation never made it past the prototype stage", and "the fadar console was not fully-interfaced with the software", that the representations made by Tektronix must have been false when made.

However, as Tektronix points out, these allegations themselves demonstrate that Tektronix was working on the promised products to the extent of developing prototypes and interfaces. The allegations simply imply that Tektronix's efforts were not as successful as Plaintiff alleges they should have been. Over-optimistic projections as to product development are not fraudulent simply because they turn out to be untrue; such allegations amount to simply "fraud by hindsight." *In re Herbalife Securities Litigation,* 1996 U.S. Dist. LEXIS 11484, *12 & n. 4 (C.D.Cal.1996) ("When a firm 'bathes itself in a rosy light' and then later 'discloses that things are less than rosy'", such statements do not constitute fraud). A plaintiff does not satisfy the falsity requirement by merely asserting that a company's later revelation of bad news means that "earlier, cheerier" statements must have been false. *Glen-*

*Fed,* 42 F.3d at 1548. This is a classic definition of so-called "fraud by hindsight" and it does not establish falsity. *In re VeriFone Securities Litigation,* 784 F.Supp. at 1486 (holding that a plaintiff does not allege fraud simply by alleging that corporation was aware of more negative projections than it supplied the public and the future fell short of the corporation's more optimistic statements). As a result, the observations that Digital Images asserts to support the allegations of misrepresentation amount to nothing more than "fraud by hindsight". Therefore, the observations cannot be used to support Digital Images allegations of fraud.

2) Direct Communications Between Digital Images and Named Tektronix Employees

■■■ Digital Images sets forth direct communications between Digital Images and named Tektronix employees during April 1998 through July 1998 to support the allegations that the representations were false when made by Tektronix.

a) One–To–One Conversation Between Digital Images President And Tektronix Andrew Schneider

The Complaint asserts that the representation made by Andrew Schneider to Plaintiff's President was false when made. The representation was made on March 2, 1998 by Andrew Schneider to Plaintiff's President that "Tektronix would be in a position to deliver 24–frame software for the V.I.P. system no later than September 1, 1998."

However, none of the direct statements asserted to support the allegation of falsity are made contemporaneously with the March 2, 1998 conversation. In fact, the April 1998 direct communication made by David Abel (Tektronix' Head of Software Development) that Tektronix "did not intend to create 24–frame software for the V.I.P. editing system" appears to negate the representation made by Tektronix sales representative Andrew Schneider on

March 2, 1998. As a result, these direct statements do not support the allegation that the representation was false when made by Andrew Schneider.

b) Public Statements

The only actionable public statement of alleged fraud is contained in the March 2, 1998 Press Release that states that "[t]he upcoming release of Version 6.0 . . . brings . . . new features to Lightworks Turbo and Heavyworks systems, including 5 min/GB picture resolution for the Heavyworks product . . ." However, the same direct statements are asserted to support the allegations of falsity for the March 1998 Tektronix press release that are used to support the March 2, 1998 conversation between Andrew Schneider and Plaintiff's President. As a result, the Complaint does not allege sufficient support for the assertion that the press release statement was false when made for the same reasons set forth in the analysis of the March 2, 1998 conversation. Therefore, the allegations that the (1) March 2, 1998 conversation between Plaintiff's President and Tektronix Andrew Schneider, and the (2) March 1998 Tektronix press release were false when made are not adequately supported in the Complaint.

*iii) Requirement of Specifying How the Alleged Misrepresentation Benefits Tektronix*

■■■ Tektronix asserts that the Complaint does not state precisely what defendants obtained as a result of the alleged fraud. However, Digital Images appears to adequately address Tektronix concern. Digital Images infers what appears to be the obvious benefit "that Tektronix believed it would make less money if it told the truth than by 'leading its customers on' ". The benefits that Tektronix obtained from the alleged misrepresentations are Lightworks sales. Therefore, the requirement of specifying the benefits obtained as a result of the alleged misrepresentations is satisfied.

*iv) Whether Any of The Actionable Assertions Of Fraud Fall Within The Exception to Rule 9(b)*

Digital Images asserts that the Complaint is general only when necessary because the facts are in Tektronix possession. Indeed, the Ninth Circuit has allowed Rule 9(b) to be relaxed with respect to matters within the sole possession and control of the opposing party. *Neubronner*, 6 F.3d at 671 (upholding dismissal of fraud claims for failure to meet Rule 9(b) but holding "some limited discovery might be permitted" in an insider trading case). However, this exception does not nullify Rule 9(b). "Mere conclusory allegations of fraud are insufficient. Statements of time, place, and nature of the fraudulent activities are required, so that defend can prepare an adequate answer to the allegations." *Wool*, 818 F.2d at 1439.

a) One–to–One Conversation Between Digital Images' President And Tektronix' Andrew Schneider

 The conversation between Digital Images' President and Andrew Schneider does appear to fall within the exception to Rule 9(b). The exact timing of the decision by Tektronix determined not to create the 24–frame software for the V.I.P. is a matter "in defendants' sole and exclusive control." Furthermore, the allegation is specific enough that Tektronix can prepare an adequate answer to the allegation.

As a result, the Plaintiff is entitled to go forward on a limited basis with respect to this statement. However, the Court also notes that—according to the Complaint—Tektronix informed Digital Images approximately one month later that Tektronix would *not* produce 24–frame software. Under the circumstances, the Court is less than certain that Digital Images can claim any damages arising from this statement. As discussed in the Conclusion of this Order, the Court ORDERS that Digital Images plead its specific damages from this alleged misstatement before the Court will open discovery.

b) Public Statements

 The only public statement that appears to be more than puffery is the statement made in the March 1998 Press Release that "[t]he upcoming release of Version 6.0 software brings dramatic new features to Lightworks Turbo and Heavyworks systems, including 5 min/GB picture resolution for the Heavyworks product...".

Whether Tektronix was developing the software that included the new feature of "5 min/GB picture resolution for the Heavyworks product" as represented in the Press Release is also a matter in "defendants' sole and exclusive control". Moreover, the allegation is specific enough so that Tektronix can prepare an adequate answer to the allegation.

As with the previous statement, the Plaintiff is entitled to go forward on a limited basis with respect to this statement. However, the Court also notes its uncertainty that this particular omission (the presence or absence of 5 min/GB resolution) would be material to the continuance of Plaintiff's business. As noted above and discussed in the Conclusion of this Order, the Court will ORDER that Digital Images plead the specific nature of the damages that resulted from this misstatement before the Court will open discovery in this case.

B. *Plaintiff's Claim Seven for Promissory Estoppel*

The Complaint alleges that Digital Images reasonably relied on the representations and promises made by Tektronix and expended funds in anticipation of continuing to act as a vendor of Lightworks products. As a result of this reliance, Digital Images alleges it has been damaged and is entitled to recover the reasonable value of all amounts expended by it in reliance on Tektronix statements and promises with respect to the Lightworks system.

To establish a claim for promissory estoppel the Plaintiff must plead: (1) the existence of a promise, (2) that the promisor reasonably should have expected to induce the promisee's reliance, (3) that the promisee actually induce[d] such reliance, (4) that such reliance is reasonable, and (5) that injustice can be avoided only by enforcement of the promise. *Aguilar v. International Longshoremen's Union Local # 10*, 966 F.2d 443, 444 (9th Cir.1992).

### 1) Plaintiff Has Not Adequately Alleged The Existence of an Enforceable Promise

Tektronix asserts that the Complaint does not allege that Tektronix made any statements or representations concerning Digital Images continued status as a Lightworks vendor. Moreover, Digital Images decided to exclusively promote the Lightworks product without a verbal or written contract with Tektronix. As a result, Tektronix asserts there is no enforceable promise for the basis of a promissory estoppel claim.

#### i) Alleged Promises Made During The Lightworks Owners' Group Meetings

The Complaint re-alleges the exact same representations and promises as set forth in the fraud claims to establish an enforceable promise for promissory estoppel. Digital Images alleges that at meetings of the Lightworks Owners' Group Tektronix promised to complete and deliver new software for the Lightworks and Heavyworks film editing products (known as "Version 6.0").

■ To be enforceable, a promise must have definite terms. The alleged promises have vague terms. For example, terms that state "high priority" development of a number of different products "would be pursued full tilt", and that Tektronix had developed technology "superior to Avid's" are vague. Likewise, the promise that

Tektronix "implemented an aggressive program" that included "vastly increasing" corporate resources to promote the Lightworks system is also vague. These terms are not definite enough to provide this Court with a rational basis for determining the scope of duty, limits of performance, and basis for assessment of damages. *Ladas*, 19 Cal.App.4th at 770, 23 Cal.Rptr.2d 810 ("To be enforceable, a promise must be definite enough that a court can determine the scope of the duty and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages."). As a result, the alleged promises made during meetings of the Lightworks Owners' Group are not enforceable.

Furthermore, the Complaint asserts the same unenforceable promises made at the Lightworks Owners' Group meetings to support the allegations of enforceable promises made during: (1) one-to-one conversations between Digital Images' President and named Tektronix sales representatives and executives, (2) periodic direct communications, and (3) industry conventions. Similarly, these alleged promises do not have definite terms. Therefore, these alleged promises are also not enforceable and cannot be the basis of a promissory estoppel claim.

#### ii) Alleged Promises Made Through Public Statements

■ The Complaint alleges that the public statements made by Tektronix contain enforceable promises. However, again the alleged promises do not have definite terms. For example, the alleged promises that Tektronix would "provide a price/performance package which is unmatched in the industry today", "Tektronix is committed to the Lightworks editing line," "to make every aspect of the product superior", and Tektronix was actively pursuing the creation of the "next generation of Lightworks." [5] Such vague terms are not definite enough to provide this Court

---

5. Digital Images also alleges without identifying the source that in August 1998 Tektronix

made a public promise to the effect that Tektronix was developing a plan to introduce a

with a rational basis for determining the scope of duty, limits of performance, and basis for assessment of damages. As a result, none of the alleged promises contained in the public statements are enforceable promises for a claim of promissory estoppel.

### iii) Alleged Promise Made by Andrew Schneider

Finally, the Court considers the statement allegedly made by Andrew Schneider that Tektronix was in a position to introduce 24–frame software by September, 1998. This statement, even if true, could not be reasonable interpreted as a promise that Tektronix *would* develop 24–frame software by that point.

### 2) Requirement That Injustice Can Be Avoided Only By Enforcement Of The Promise

Even if one or more of the statements discussed above could constitute a promise, Plaintiff is required to demonstrate that injustice can be avoided only by enforcement of the promise.

 The only facts that are alleged to determine whether injustice can be avoided by enforcing the promise is that Digital Images is essentially out of business due to the discontinuation of Lightworks products by Tektronix. Courts have rejected promissory estoppel claims in such circumstances as inconsistent with the "needed flexibility of businesses to change their policies to respond to changing economic circumstances." *Ladas v. California State Automobile Ass'n,* 19 Cal.App.4th 761, 772–73, 23 Cal.Rptr.2d 810 (1993). Plaintiff's failure to identify a reason for enforcement constitutes a second and independent ground on which the Court must dismiss the claim for promissory estoppel.

## V. CONCLUSION

The Court DISMISSES claims three, four, and five of the complaint without

prejudice. Plaintiff is entitled to replead those claims in light of the Court's analysis.

With respect to those alleged statements that the Court found might constitute an actionable misstatement, the Court ORDERS that Plaintiff specifically identify the reliance it placed on those statements and the nature of the harm resulting from that reliance. Although the Complaint generally explains the reliance that Digital Images placed on the expectation of a continuing supply of Lightworks products, the Complaint does not specify the reliance placed on these two particular statements. Because the one statement was quickly contradicted and the other statement relates to a single product feature, the Court requires that Plaintiff identify its reliance on these statements before the Court will open discovery in the case.

As discussed in the Court's concurrent Order relating to the antitrust claims, Plaintiff should file any amended complaint by Tuesday, November 2, 1999.

IT IS SO ORDERED.

---

new series of Lightworks products and upgrades to compete aggressively with Avid. Without more information this allegation of

an enforceable promise does not have enforceable terms.